In the Matter of Carmen ALESSI and Cora Alessi, Debtors.

Bankruptcy No. 81 B 00088.

United States Bankruptcy Court, N. D. Illinois, E. D.

June 24, 1981.

Morgan & Susman, Chicago, Ill., for bankrupt.

Jewel N. Klein, Illinois Racing Board, Chicago, Ill., Moshe Jacobius, Chicago, Ill., Chester L. Chowaniec, Examiner of Titles, Law Dept., Chicago, Ill., for Illinois Racing Board.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause arose on a motion of Carmen and Cora Alessi that the Illinois Racing Board be held in contempt of this Court for denying an application for license to race horses to Carmen Alessi after a joint petition for relief under Chapter 7 of the Bankruptcy Code had been filed on January 7, 1981. The argument is that the automatic stay provisions of Section 362 prevent the taking of action adverse to a debtor.

Alessi had been racing horses under a temporary license which he sought to have made permanent. On February 10, 1981 the Stewards recommended to the Board that the application be denied for failure to meet the financial responsibility requirements of Rule 3.08. The Board denied the application for license at a meeting held March 19, 1981.

In the petition Carmen Alessi stated that his occupation is the ownership, training and racing of horses in the State of Illinois, all of which are governed by the Horse Racing Act of 1975 (1979 Ill.Rev.Stat. Ch. 8, §§ 37–1 through 37–52). Among other things the act provides for the creation of the Illinois Racing Board to supervise the broad powers granted by the Act to control horse racing within the state (§ 37–2). The rule making power of the Racing Board is set forth in § 37–9, as follows:

§ 37–9

"(b) The Board is vested with the full power to promulgate reasonable rules and regulations for the purpose of administering the provisions of this Act and to prescribe reasonable rules, regulations and conditions under which all horse race meetings in the State shall be held and conducted. Such reasonable rules and regulations are to provide for the prevention of practices detrimental to the public interest and for the best interests of horse racing and to impose penalties for violations thereof."

Included in the Rules established by the Racing Board is Rule 3.08, which provides as follows:

Rule 3.08

"Any participant who shall accumulate unpaid obligations, or default in obligations, or issue drafts or checks that are dishonored, or payment refused, or otherwise display financial irresponsibility reflecting on his experience, character or general fitness shall be subject to refusal, suspension or revocation of license."

Prior to filing his bankruptcy petition Carmen Alessi had applied to the Racing Board for a license and had been subjected to a hearing process in connection with it. Particular attention was paid at the hearing to allegations that Alessi had negotiated a number of checks which had been returned to the payees unpaid and marked NSF, as well as to allegations that Alessi owed debts to several other entities which had not been paid.

After the Racing Board's hearing had been held but prior to the time that a decision had been readied, the attorney for Alessi advised Jewel Klein, attorney for the Racing Board, of the filing of the bankruptcy petition and of the automatic stay provisions of § 362 of the Bankruptcy Code. Nevertheless, the Board continued its proceedings and on February 18, 1981, issued a "steward's ruling", which denied the license. On March 19, 1981, the Board issued its formal findings which supported the decision of denial.

Counsel for Alessi contends that the action of the Board is contrary to the provisions of § 362(a) and § 525 of the Bankruptcy Code; of the former because action was taken and of the latter because of the nature of the decision. The counter argument is that the hearing and decision were consistent with § 362(b)(4), which provide as follows:

> (b) "The filing of a petition ... does not operate as a stay---
> (4) ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;"

The issue to be determined by this Court is whether or not the Racing Board in its hearing and decision was enforcing its police power solely, or whether it also was acting in a manner which was designed to affect the relations of Alessi with his creditors, which would be an action barred to the states by the Supremacy Clause during such time as there existed federal legislation covering debtors under the bankruptcy clause. So long as the police power was being exercised, the manner in which the hearing was conducted is beyond the reach of this Court's proper authority. If there were any improprieties, that is a matter which can be addressed as a question of Illinois law by state courts.

The regulation by the several states of the practice of betting in general and of betting on horse races in particular is so widely recognized that the Court may take judicial notice of the prevailing view that this is a proper exercise of the police power reserved to the states. For our purposes it is not important whether the power is deemed to be derived as a control over the general welfare of the citizens or whether it is a revenue measure. In either event, the states have determined that the running of honest races is an essential adjunct to the entire betting process, and the several states have established elaborate procedures to the end that the running of the races and the betting on the races will be conducted honestly.

Although the debtor's counsel urges that the Racing Board has acted against the debtor because of his bankruptcy, which would be prohibited by § 525 of the Code, it rather appears that the gravamen of his offense was the issuance of five checks at a time when he did not have on deposit sufficient money to cause the checks to be honored when they were presented. It is important for this Court, in its findings, to determine whether the Racing Board based its finding upon his condition of insolvency or filing of bankruptcy, or whether the finding was based upon conduct which the Board determined was inimical to the best interests of horse racing.

Four specific findings respecting Alessi's financial condition and conduct were made to the Board:

1. During the period October 18—November 18, 1980, at Maywood Park Race Track in Illinois, the debtor negotiated five NSF checks totalling $10,500 in payment to Washington Harness Race Track Corporation;

2. At the time of the hearing he had accumulated $16,700 in debts to equipment companies, feed companies, and veterinarians in California, New Jersey and Illinois, as well as $13,000 in debts to two Illinois resident horse owners;

3. At the time of the hearing he owed gambling debts of $19,500 to two Las Vegas casinos;

4. In July, 1980 his license had been suspended in California because of

the California Horse Racing Board regulations respecting dishonored checks, but the suspension had been terminated at the time of the Illinois hearing.

■ There would appear to be no question but that under the police power or the public welfare power reserved to the several states the Illinois legislature has the power to pass laws respecting the business of horse racing and activities inherently associated with it. Nothing has been presented to this Court to suggest that the legislature has acted arbitrarily or capriciously in its exercise of that power or in its delegation of that power to the Racing Board. Similarly we have received no evidence that the Racing Board has acted arbitrarily or capriciously or that it has violated the supremacy clause in its actions affecting a debtor-creditor relationship. Its finding with respect to that is as follows:

"10. The accumulation of unpaid obligations by Alessi in the racing industry, especially the debts to persons for whom Alessi has driven and with whom he has owned horses, subjects Alessi to influence and power by those persons and endangers the integrity of the sport of horse racing."

■ As stated above, it is beyond the province of this Court to determine whether or not the Racing Board hearings were conducted properly. We hold that the findings of the Board supports its conclusion to deny the license of Alessi under Rule 3.08 of the Rules and Regulations of Harness Racing and do not conflict with the powers of this Court to administer the instant proceeding. We take no position on what the order of this Court might have been if the creditors to whom money was owed were not themselves directly involved in horse racing or if the debts had not been incurred in the case of horses which are themselves the object of control of the Racing Board.