In re The RATH PACKING COMPANY,
an Iowa Corporation, Debtor.

Bankruptcy No. 83–02293.

United States Bankruptcy Court,
N.D. Iowa.

Dec. 8, 1983.

Fred M. Haskins, Asst. Atty. Gen., of Iowa, Des Moines, Iowa, for Ins. Dept. of Iowa.

Findings of Fact, Conclusions of Law, and *ORDERS* Granting in Part and Denying in Part Motion for Temporary Protective Order and Other Relief, with Memorandum

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is a Motion for Temporary Protective Order and Other Relief filed by The Rath Packing Company (Debtor) on November 7, 1983. In its Motion, the Debtor sought, *inter alia,* (i) a finding that the revocation of Debtor's self-insurance exemption by the Iowa State Insurance Commissioner violated 11 U.S.C. §§ 362 and 525; (ii) an order enjoining the Commissioner from revoking the Debtor's self-insurance exemption, and (iii) an order granting the Debtor leave to continue as a self-insurer during the pendency of the Debtor's Chapter 11 proceedings under the same funding requirements in existence on the date of the filing of the petition. In light of the urgency of the matter and to preserve the *status quo,* this Court issued a Temporary Protective Order on November 7, 1983, that, *inter alia,* enjoined the Commissioner from revoking the Debtor's self-insurance exemption, pending final hearing on the Debtor's Motion.

On November 29, 1983, a final hearing was held at which time were present attorneys Catherine Steege, Chicago, R. Fred

Dumbaugh, Cedar Rapids, and Steven A. Weidner, Waterloo, for the Debtor and Assistant Attorney General Fred M. Haskins for the Commissioner. The parties agreed to submit the matter without an evidentiary hearing and stipulated for admission nineteen exhibits. The matter was then taken under advisement and the Court, being fully advised and pursuant to F.R.B.P. 7052, now makes the following Findings of Fact, Conclusions of Law and Orders.

## I. *Statement of Facts*

Stated briefly, Iowa Code § 87.1 (1983) requires applicable employers to carry workers' compensation insurance. An employer may "be relieved of the provisions of ... Chapter" 87, however, upon compliance with the various requirements in Iowa Code § 87.11 (1983).[1]

Based on the statutory scheme outlined above, the Debtor has enjoyed § 87.11 exemption[2] since the 1960's. On June 24, 1981, the Debtor filed with the Commissioner an application for renewal of the exemption that would have expired on June 30, 1981. By the filing of this application for renewal, the Commissioner deemed the exemption not to have expired. The parties then engaged in negotiations and discussions and on September 17, 1982, a hearing was held to determine if the Debtor's exemption should be withdrawn. Throughout these discussions and negotiations it appeared that the Commissioner was well aware of the Debtor's financial condition. No revocation of the exemption was affected, however.

The Debtor filed a Chapter 11 petition on November 1, 1983. Via a letter dated November 2, 1983, the Commissioner informed the Debtor that "from the date of this letter Rath Packing Company shall no long-

---

1. *Iowa Code* § 87.11 was amended in 1982 to require payment of handling fees. 1982 (69th G.A.) Iowa Acts, Ch. 1003, § 1. *This* amendment does not, however, affect the substance of § 87.11. Thus, while notable events in the case at bar occurred before the effective date of the amendment, the amendment will not affect the resolution of the issues sub judice.

2. The administrative procedure by which an employer may obtain § 87.11 relief is unclear. *See generally* n. 6 *infra.* It appears, however, that an employer seeking § 87.11 relief must complete an "Application of Employer for relief from insurance" (Commissioner's Exhibit G). After examining the Application, the Commissioner issues an "Employer's Release." (Commissioner's Exhibit H).

er be considered to be relieved from the requirements of Chapter 87 of the Code." Alleging that this revocation violated[3] 11 U.S.C. §§ 362 and 525, the Debtor filed a Motion for Temporary Protective Order and Other Relief.

## II. *Subject Matter Jurisdiction*

In its supplemental brief the Commissioner asserted that this Court "may lack subject matter jurisdiction to review the Commissioner's action." Specifically, the Commissioner, reasoning that a review of his action may only be conducted by a state court under Iowa Code § 17A.19 (1983), first argues that this Court lacks jurisdiction to review the November 2, 1983, revocation. Second, the Commissioner contends that the interim rule governing the operation of this Court does "not meet[ ] the *Marathon* problem." These assertions should be rejected.

First, as indicated in n. 3 *ante,* this Court is not reviewing the question of whether "the Commissioner erred in applying Iowa Code section 87.11." Rather, the issue facing this Court is whether the Commissioner's action, viewed in its generic sense and without any determination as to its validity under non-bankruptcy law, violated the automatic stay and governmental discrimination provisions of the Bankruptcy Code. The Commissioner's contention that this Court is exercising a state-court function is therefore misplaced.

Turning to Commissioner's *Marathon* argument, this Court observes that it may be an understatement to assert that since *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2528, 73 L.Ed.2d 598 (1981), the courts of

bankruptcy have labored under the shadow of jurisdictional uncertainties. *E.g.,* Ranii, *Bankruptcy's Twilight Zone,* Nat'l L.J., Nov. 7, 1983, at 1, col. 1. Indeed, judicial decisions criticizing the validity of the interim rule are no longer an uncommon occurrence. *See, e.g., In re Wildman,* 30 B.R. 133 (Bkrtcy.N.D.Ill.1983); *In re Richardson,* 27 B.R. 407 (Bkrtcy.D.Utah 1983), *vacated sub nom., In re Color Craft Press, Ltd.,* 27 B.R. 962 (D.C.D.Utah 1983). Nonetheless, the Eighth Circuit Court of Appeals has found the "Local Rule ... constitutional and valid." *In re Hansen,* 702 F.2d 728, 729 (8th Cir.1983); *accord, e.g., In re Braniff Airways, Inc.,* 700 F.2d 214 (5th Cir.1983). Given *Hansen,* this Court is constrained to disagree with the Commissioner's assertion that the interim rule governing operation of bankruptcy matters in this district does "not meet[ ] the *Marathon* problem."

In sum, the Commissioner's subject matter jurisdiction arguments should be rejected.

## III. *Governmental Discrimination*

11 U.S.C. § 525 provides[4]:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or

---

**3.** The Debtor in its brief, intimated that the revocation was improperly effected. Because the resolution of the issues at bar does not require a finding as to the propriety of the revocation procedure, the ruling herein is not intended, and should not be interpreted, as a determination of the propriety—constitutional, statutory, administrative, or otherwise—of the procedure used by Commissioner. *Cf. In re Alessi,* 12 B.R. 96, 98 (Bkrtcy.N.D.Ill.1981) ("If there were any improprieties [in denying debtor a racing license], that is a matter which can

be addressed as a question of Illinois law by state courts.").

**4.** 11 U.S.C. § 525 excepts from its application actions taken pursuant to the Perishable Agricultural Commodities Act, the Packers and Stockyards Act, or 7 U.S.C. § 204. It appears that none of these exceptions is germane to the case at bar. The three § 525 exceptions will therefore not be addressed further.

denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The Commissioner argues[5] that he did not revoke a "license, permit, charter, franchise, or other similar grant" within the meaning of § 525. Further, the Commissioner argues that he did not act "solely because" of the Debtor's status as a debtor under Title 11 or other tainted reasons under § 525.

**1. "[L]icense, or ... similar grant"**

In its report to the House of Representatives, the Judiciary Committee stated:

[S]ection [525] permits further development to prohibit actions by *governmental* or quasi-governmental *organizations that perform licensing functions* ... that can seriously affect the debtor's livelihood or fresh start ....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News, pp. 5787, 6323. Indeed, the Committee noted that the "enumeration of various forms of discrimination ... is not intended to permit other forms of discrimination." *Id.* Thus, "section [525] is not exhaustive." *Id.*

In the case at bar, the Commissioner in revoking § 87.11 relief exercises a "licensing function." For example, a proceeding to determine compliance with Iowa Code § 87.1 appears to be a "contested case proceeding." *E.g.* Iowa Admin.Code § 500–4.1 (a proceeding to determine compliance with Chapters 85 and 87 before the Industrial Commissioner is a contested case). Indeed, the Insurance Commissioner "with the concurrence of the Industrial Commissioner may ... at any time ... upon reasonable notice ... and *upon hearing,* revoke for cause any order ... relieving any employer from carrying insurance." Iowa Code § 87.20 (1983) (emphasis added).[6] Further, the Industrial Commissioner is empowered to initiate proceedings whenever there exists "reason to believe that there has not been compliance with the workmen's compensation law." Iowa Admin.Code § 500–4.3. Most importantly, the exemption granted by the Commissioner constitutes a "license" in the ordinary sense of the term, *viz.,* the exemption permits "unusual freedom of action ... because of extenuating circumstances or special prerogatives." *Websters Third International Unabridged Dictionary* 1304 (1971) (defining "license"). *See generally In re Coleman American Moving Services, Inc.,* 8 B.R. 379, 383 (Bkrtcy.D.Kan.1980) ("Section 525 ... is a general statute, the terms of which are defined by *common usage.*") (Emphasis added).

In sum, this Court finds and concludes that the Commissioner in revoking the Debtor's Iowa Code § 87.11 exemption exercises a "licensing function" envisioned by Congress when enacting 11 U.S.C. § 525. Thus, the revocation was effected on "a license or similar grant"[7] under § 525.

---

**5.** While not specifically stated in its brief, the Commissioner's argument seems to be motivated by the rule of *ejusdem generis,* which teaches that "where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980); *accord, e.g., De Claire Mink Ranches v. Federal Foods, Inc.,* 192 F.Supp. 148, 154 (N.D.Iowa 1961). This court's conclusion, *see* text, *infra,* does not violate that rule.

**6.** There appears to be no published administrative rules governing a § 87.11 or § 87.20 hearing. *See* Iowa Admin.Code, *Rules Implementing Statutes* 5 (3/16/83).

**7.** This Court's conclusion is consistent with those reached by other courts in interpreting the phrase "license, permit, charter, franchise, or other similar grant" to include government contracts, *e.g., In re Marine Electric Railway,* 17 B.R. 845 (Bkrtcy.E.D.N.Y.1982); public housing privileges, *e.g., In re Gibbs,* 9 B.R. 758 (Bkrtcy.D.Conn.1981); college transcripts, *e.g., In re Heath,* 3 B.R. 351 (Bkrtcy.N.D.Ill.1980), and extension of credit. *See In re Rose,* 23 B.R. 662 (Bkrtcy.D.Conn.1982). Such interpretation furthers the Congressional goal of providing debtors with a "fresh start," H.R.Rpt, *supra,* at 367, and comports with the judicial duty to interpret statutes "so as to carry out the generally expressed legislative policy." *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 795, (8th Cir.1967); *see, e.g., Gonzalez v.*

## 2. "[S]olely because"

■ In his November 2, 1983, letter revoking the Iowa Code § 87.11 status, the Commissioner indicated that the revocation was based on the Debtor's November 1, 1983, bankruptcy filing *and* the "information presented . . . at the [September 17, 1982] hearing." Relying on this assertion, the Commissioner argued that his decision was not "solely because" of the Debtor's Chapter 11 status or other tainted reasons in § 525.

Nowhere in the Code or its legislative history is the seemingly obvious term "solely because" defined.[8] Courts considering § 525 questions have placed various interpretations on the term, ranging from "only because," *In re Hinders,* 22 B.R. 810, 812 (Bkrtcy.S.D.Ohio 1982), "only reason," *In re Gibbs,* 9 B.R. 758, 763 (Bkrtcy.D.Conn.1981), "except for the fact," *In re Son-Shine Grading, Inc.,* 27 B.R. 693, 695 (Bkrtcy.E.D.N.C. 1983), to "reason independent of" *In re Richardson,* 27 B.R. 560, 565 (Bkrtcy.E.D. Pa.1982). In addition, the court in *In re Rose,* 23 B.R. 662, 668 n. 8 (Bkrtcy.D.Conn. 1982), noted, but did not specifically adopt, the debtor's suggestion that " 'solely' could be considered as meaning 'primarily' or 'predominately.' " Rather than specifically adopting one definition from this display of definitions, this Court will consider these definitions as instructive. After such consideration, this Court finds and concludes that in the circumstances of the instant case the Commissioner decided to revoke the Debtor's exemption "solely because" of the Debtor's Chapter 11 status.

Since filing its application for renewal in June 1981, the Debtor has been, in effect, granted the permission to continue as a self-insurer until further notice. From June 1981 to November 1983, the Commissioner had ample opportunities to formally withdraw the exemption. Nonetheless, the Commissioner did not formally withdraw the exemption until November 2, 1983, one day after the Debtor filed its petition. Indeed, after the September 1982 hearing, the Commissioner possessed all the information cited as reasons for revoking the Debtor's exemption except the filing of the bankruptcy schedules on November 1, 1983. Nonetheless, the Commissioner failed to act upon the record available to him between September 1982 and November 1, 1983. Moreover, nothing in the record shows that had the Debtor not filed its petition on November 1, 1983, the Commissioner would have revoked the exemption. Stated succinctly, "[i]t is more probable than not that the debtor's problems did not arise overnight." *In re Coleman American Moving Services, Inc.,* 8 B.R. 379, 384 (Bkrtcy.D. Kan.1980). Viewed in this light, the Commissioner's assertion that its decision to revoke was based on non-tainted reasons is not credible.[9]

Assuming that the Commissioner's assertion was credible, the strength of the Commissioner's assertion is weak when compared with those cases that have found no § 525 violation. In *In re Alessi,* 12 B.R. 96 (Bkrtcy.N.D.Ill.1981), for example, a state board refused to issue a racing license to the debtor. Finding no § 525 violation, the *Alessi* court noted the following non-tainted reasons to support the state board's decision: (a) NSF checks, (b) gambling debts,

*Young,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).

8. The choice of using the word "solely" has drawn criticism in that it "raises the possibility that discriminatory acts will be justified by related factors outside the specific terms of the section." 1 W. Norton, *Bankruptcy Law & Procedure* § 27.06, at 27–11 (1981).

9. Examples cases in which the court was not convinced by the governmental unit's assertion of non-tainted reasons include *In re Lambillotte,* 25 B.R. 392, 394 (Bkrtcy.M.D.Fla.1982)

("a complete reading of the transcript leaves no doubt that the County Commissioners were primarily concerned with the status of the Debtor's prior obligation"), *In re Coleman American Moving Services, Inc.,* 8 B.R. at 384 ("The court concludes from the reasons given [for rejection of bid] and the remaining evidence and inferences drawn therefrom that the defendants did in fact discriminate against the debtor"), and *In re Briner,* 10 B.R. 850, 853 (Bkrtcy.D.Colo. 1981). *See also In re Maley,* 9 B.R. 832, 833 (Bkrtcy.W.D.N.Y.1981) (state agency's other reasons supporting denial of liquor license "appears to be *de minimis*").

and (c) an "accumulation of unpaid obligations subjects [the debtor] to influence . . . and endangers the integrity of the sport of horse racing." *Id.* at 98–99. Similarly, in *In re Rose,* 23 B.R. 662 (Bkrtcy.D.Conn. 1982), a government lender denied debtor's loan application because, *inter alia,* the debtor was "not credit-worthy," had only $108 cash on hand, overdrawn the checking account eight times, and borrowed from a second mortgagee to satisfy the purchase price on the house. *Id* at 667. In addition, the loan officer testified that prior bankruptcy "does not mean the person does not get a loan." *Id.* No § 525 violation was found in *Rose. See id.* at 667–68.[10]

The record at bar does not contain the quantum of evidence or testimony adduced in *Alessi* or *Rose.* Unlike the decisions in *Alessi* or *Rose,* the November 2, 1983, decision to revoke was based solely on the Debtor's Chapter 11 status. Within the context of the reasons given by the Commissioner in revoking the Debtor's exemption, a *Rose* by another name does not smell as sweet. *Cf.* W. Shakespeare, *Romeo and Juliet* Act II, Scene 2, at 404 (Scott Foresman & Co. 1961).

Last, this Court is persuaded that in addition to violating the literal provisions of § 525, the Commissioner's action, if allowed to stand, would frustrate the rehabilitative policy of the Bankruptcy Code and is thus violative of § 525.[11] For example, the Debtor, deprived of its self-insurer status, would undoubtedly need to purchase insurance to comply with Iowa Code § 87.1. Such a purchase would require payment of high premiums. To require the Debtor to undertake such a maneuver at the infancy of this proceeding may be exceedingly burdensome. In any event, the "Day After" summary revocation of the Debtor's exemption is not conducive to a rehabilitative environment.

In sum, the two arguments made by the Commissioner are rejected. Therefore, this Court finds and concludes that the Commissioner's November 2, 1983, revocation of the Debtor's Iowa Code § 87.11 self-insurer status violated 11 U.S.C. § 525. *Accord In re Hillcrest Foods, Inc.,* 10 B.R. 579, 580 (Bkrtcy.D.Me.1981). The revocation was therefore null and void.[12] *Id.*

## IV. *Automatic Stay* [13]

The filing of a bankruptcy petition "operates as a stay, applicable to all enti-

**10.** A third case, *In re Santa Clara Circuits West, Inc.,* 27 B.R. 680 (Bkrtcy.D.Utah 1982), involves a utility company seeking a security deposit from a debtor because of the bankruptcy filing, "numerous missed and late payments," and "unpaid balances carried over almost every month in the past two years." *Id.* at 682. The *Santa Clara* court's resolution of the issue under 11 U.S.C. § 366, however, rendered it "unnecessary to address the debtor's [§ 525] argument." *Id.* at 684. Thus, while it appears that the case involved actions based on tainted and non-tainted reasons, *Santa Clara* does not fall within the *Alessi* and *Rose* pattern.

**11.** At least two courts have taken such a policy-oriented approach to resolve a § 525 action. In *In re Anderson,* 15 B.R. 399, 401 (Bkrtcy.S. D.Miss.1981), the court held that "[i]t is beyond argument that the State['s] . . . conduct frustrates the policies underlying Chapter 11 Reorganization . . . and is . . . violative of section 525." Similarly, in *In re Latchaw,* 24 B.R. 457, 462 (Bkrtcy.N.D.Ohio 1982), the court observed that "an order enjoining an employer from suspending, discharging, or taking other discipli-

nary measure against its employee is necessary or appropriate where the wages earned from said employment are used to fund a Plan which has been confirmed." Such an approach evinces the Congressional encouragement that "[t]he courts will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy," H.R.Rpt., *supra,* at 367, U.S.Code Cong. & Admin.News, p. 6323.

**12.** This Court does not, by so holding, prohibit the Commissioner from revoking the Debtor's self-insurer status at some later time and in a manner not violative of 11 U.S.C. § 525. *See* Div. V, *infra.* As stated in *In re Haffner,* 25 B.R. 882, 888 (Bkrtcy.N.D.Ind.1982), "if [the government] believes that the debtors have violated federal laws regarding the creation of the prepetition debt, the Bankruptcy Code provides procedures and remedies by which the government can assert its rights within the bankruptcy law."

**13.** The resolution of the § 525 question in Div. III, *supra,* may render it unnecessary to resolve any § 362 question. Therefore, underlying the

ties, of" various actions against property of the estate, property of the debtor, and the debtor itself. 11 U.S.C. § 362(a). Certain actions or proceedings are, however, not stayed. One such proceeding is "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). The Debtor in the case at bar asserts [14] that the Commissioner's November 2, 1983, revocation violated 11 U.S.C. § 362(a). Countering the Debtor's assertion, the Commissioner argues that his action falls under the exception provided by 11 U.S.C. § 362(b)(4).

Section 362(a)(1) stays "the commencement or continuation of a[n] . . . administrative . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under" Title 11. This Court finds, and the parties do not seriously contend the contrary, that the Commissioner's revocation falls under the purview of § 362(a)(1). The dispute, however, is whether the revocation is excepted from § 362(a)(1) by § 362(b)(4).

The definitive case on § 362(b)(4) in this district is *Missouri v. United States Bankruptcy Court*, 647 F.2d 768 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). *See also* Annot., 58 A.L.R.Fed. 265, 293 (1982). In *Missouri*, the state argued that "enforcement of grain laws is a valid exercise of a state's police and regulatory powers [because] section 362(b)(4) . . . permits enforcement proceedings initiated by state regulatory authorities." *Id.* at 775. The Eighth Circuit "reject[ed] those contentions." *Id.* Relying on Congressman Edwards' statement that § 362(b)(4) "is intended to be given a narrow construction . . . and [is] not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debt-

or or . . . of the estate," *id.* at 776 (quoting 124 Cong. Record H 11089), the court held that

the term "police or regulatory power" refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court.

*Id.* Applying the standard thus stated, the court held that "Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health." *Id.; accord In re King Memorial Hospital, Inc.,* 4 B.R. 704, 708 (Bkrtcy.S.D.Fla.1980) ("The health and welfare of the citizens of the State of Florida do not appear to be the overriding factor in the determination made by the defendant."); *In re Saugus General Hospital,* 1 C.B.C.2d 26, 31, 7 B.R. 347 (Bkrtcy.D.Mass.1979) ("Because the ground for revocation was the debtor's insolvency, rather than a violation of the public health or welfare, the agency's action did not involve the exercise of the state's police power").

Application of the *Missouri* test to the case at bar leads to the conclusion that the Commissioner's action does not fall within the § 362(b)(4) exception. As stated by the Iowa Supreme Court in *Stufflebean v. City of Fort Dodge,* 233 Iowa 438, 9 N.W.2d 281, 283 (1943), the "purpose, intent, and scheme of Workmen's Compensation legislation is . . . to avoid litigation, lessen the expense incident thereto, minimize appeals, and afford an efficient and speedy tribunal to determine and award compensation." More specifically, the court in *Travelers Insurance Co. v. Sneddon,* 249 Iowa 393, 86 N.W.2d 870, 873 (1957), stated that the statutes governing worker's compensation in-

discussion of the applicability of § 362 in Div. IV is the assumption that § 525 was not violated. In any event, the resolution of the § 362 question herein may be viewed as a separate and independent ground supporting this Court's conclusion in Div. V, *infra.*

**14.** In its brief, the Debtor also contends that independent of 11 U.S.C. § 362, this Court should, pursuant to 11 U.S.C. § 105(a), issue a

stay of the Commissioner's action. This Court declines the invitation. The resolution of the § 362 question would accord the Debtor adequate relief and resort need not be had to § 105(a). In addition, this Court notes that the Eighth Circuit, referring to § 105(a), recently held that "the general equitable powers granted to the bankruptcy court by the statute are not unlimited." *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983).

surance "are intended to do no more than merely protect the employer ... against liabilities for injuries to his employees. They are also intended principally to guarantee payment of compensation to injured employees in accordance with terms of the act." In the same vein, the court recently held that workers' compensation statutes are "intended to cast upon the industry in which the worker is employed a share of the burden resulting from industrial accidents." *Caterpillar Tractor Co. v. Shook,* 313 N.W.2d 503, 506 (Iowa 1981). Nowhere in the workers' compensation insurance statutes or interpretive caselaw is there a hint that such laws "affect[ ] health, welfare, morals, and safety" or "relate to ... matters of public safety and health." *Missouri,* 647 F.2d at 776; *cf.* Iowa Code Ch. 88 (1983) ("Occupational Safety and Health")[15] In contrast, the statutes and decisional law reflect a concern over the monetary compensation ability of employers. Indeed, the Commissioner in his brief admitted that "the purpose of section 87.11 is to ensure that self-insuring employers are *solvent* and *financially capable* of paying workers' compensation benefits." Thus, it is clear that Iowa Code Ch. 87 "although regulatory in nature, primarily relate[s] to the protection of the pecuniary interest in the debtor's property." *Missouri,* 647 F.2d at 776.

Having concluded that the Commissioner's action is not excepted under § 362(b)(4),[16] his November 2, 1983, revocation violated 11 U.S.C. § 362(a)(1). The revocation is, therefore, null and void. *See In re Posner,* 700 F.2d 1243 (9th Cir.1983);

*In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982); 2 *Collier on Bankruptcy* ¶ 362.11, at 362–58 (15th ed. 1983).

## V. *Debtor's Status as Self-Insurer*

■ In its Motion, the Debtor requested an order granting it "leave to continue as a self-insurer during the pendency of these Chapter 11 proceedings ... under the same funding requirements in existence" on November 1, 1983. Because this Court finds that such an order, in view of the disposition of this matter in Divisions III and IV, *supra,* is not necessary, the Debtor's Motion should be denied.

In Divisions III and IV, *supra,* this Court held that the Commissioner's November 2, 1983, revocation was null and void. Thus, in the context of the Debtor's Iowa Code § 87.11 status, nothing has changed since November 1, 1983. Viewed in this light, there is nothing to prevent the Debtor from not continuing as an Iowa Code § 87.11 self-insurer under the funding requirements in existence on November 1, 1983. It would therefore be superfluous to enter an Order granting Debtor leave to proceed in a manner that the Debtor is already so proceeding.

The Court would emphasize that the Commissioner is not precluded from seeking further relief to the Debtor's § 87.11 status. Indeed, the Court would entertain any proper mechanism—such as a motion to lift stay filed pursuant to 11 U.S.C. § 362(d) and F.R.B.P. 4001(a) and 9014—invoked by the Commissioner when the circumstances so warrant.

---

**15.** A *distinction should be drawn between* statutes such as Iowa Code Ch. 88, and others such as Iowa Code Ch. 87. Chapter 88 is designed to, *inter alia,* "reduce the number of occupational safety and health hazards." Iowa Code § 88.1(1). *As such, these laws are preventive in nature. E.g., Union Pacific Railroad v. Johnson,* 264 N.W.2d 796, 799 (Iowa 1978) In contrast, laws such as Chapter 87 are "remedial." *E.g., Crees v. Sheldahl Telephone Co.,* 258 Iowa 292, 139 N.W.2d 190, 193 (1965). *Stated in* practical terms, the Chapter 88 requirement of a safe and healthy environment serves to prevent injuries whereas the Chapter 87 requirement of insurance serves to compensate employees. *In other words, laws such as Chapter* 88 serve to reduce work-related injuries—a matter of *public* concern—whereas laws such as Chapter 87 serve to impose monetary responsibility on the employer—a matter of *private* concern.

**16.** The Commissioner, in addition to the § 362(b)(4) contention, also argues that his action is excepted under § 362(b)(5). Because this court held that the Commissioner's action is not excepted under § 362(b)(4) and thus is violative of § 362(a)(1), any discussion of the § 362(b)(5) exception is unnecessary. Section § 362(b)(5) by its terms is an exception that applies to § 362(a)(2) only. The solution of the § 362(b)(5) question thus does not affect a § 362(a)(1) violation.

 

## ORDERS

IT IS THEREFORE ORDERED AND ADJUDGED that:

1. The revocation of Rath Packing Company's Iowa Code § 87.11 (1983) status by the Iowa Insurance Commission on November 2, 1983, is null and void as being violative of 11 U.S.C. § 525.

2. The revocation of Rath Packing Company's Iowa Code § 87.11 (1983) status by the Iowa Insurance Commissioner on November 2, 1983, is null and void as being not excepted under 11 U.S.C. § 362(b)(4) and thus violative of 11 U.S.C. § 362(a)(1).

3. The Motion for Temporary Protective Order and Other Relief filed by the Rath Packing Company on November 7, 1983, is granted to the extent of the Orders entered in Paragraphs 1 and 2 *supra* and denied and dismissed in every other respect.

4. The Order entered on November 7, 1983, by this Court in regard to the Rath Packing Company's aforementioned Motion is dissolved as being no longer necessary.