### In re Vincent F. MASSENZIO, Debtor.

### Bankruptcy No. 89–00523.

United States Bankruptcy Court, N.D. New York.

Nov. 9, 1990.

David Shockey, Syracuse, N.Y., for debtor.

John R. Voninski, Syracuse, N.Y., for State of N.Y.

Mark W. Swimelar, Chapter 13 Trustee, Syracuse, N.Y.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter comes before the Court on the Debtor's motion for an order seeking to enjoin the New York State Department of Insurance ("Insurance Department") from revoking his license to act as an insurance agent within the State of New York.

Debtor obtained a temporary restraining order from this Court pursuant to Bankruptcy Rule 7065 and Federal Rule of Civil Procedure 65 on October 26, 1990 and a hearing was held before this Court on November 1, 1990.

At the hearing both the Debtor and the Insurance Department appeared as did the Chapter 13 Trustee. Following the hearing the Court found cause to extend the temporary restraining order until November 11, 1990 and offered both parties the opportunity to file memoranda of law by November 5, 1990. No memoranda of law was filed by either party.

## JURISDICTION

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and § 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), (O).

## FACTS

On March 28, 1989, the Debtor filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

On June 26, 1989, Debtor's Chapter 13 plan was confirmed by Order of this Court and Debtor alleges that he is current in his payments to the Chapter 13 Trustee pursuant to the terms of that confirmed plan.

One of the creditors listed in Debtor's Chapter 13 petition and schedules and included in his plan was the Middlesex Insurance Company ("Middlesex"). Middlesex did not object to Debtor's plan and filed a proof of claim.

On April 18, 1990, the Insurance Department served the Debtor and his former partner John. C. Reistrom ("Reistrom") with a citation and notice of hearing in accordance with alleged violations of certain sections of the Insurance Law of the State of New York ("Insurance Law"). Pursuant to the citation and notice of hearing, a hearing was held before a hearing officer at the offices of the Insurance Department in Albany, New York on May 18, 1990. While Reistrom appeared at the hearing by counsel there was no appearance by the Debtor. (See Hearing Officer's Report and Recommendations dated September 25, 1990).

Following the hearing, a Report and Recommendation was issued by the Insurance Department which recommended that the Debtor's license be revoked but that with regard to Reistrom it was recommended that the charges be dismissed and his license continue in force. *Id.*

On October 17, 1990, the Insurance Department issued a letter to the Debtor by certified mail advising Debtor that his license was revoked effective October 29, 1990 and requesting Debtor to surrender his license to the Insurance Department by return mail.

On October 26, 1990, the Debtor filed the instant motion and obtained a temporary restraining order as indicated herein which precipitated the November 1, 1990 hearing in this Court.

Neither party produced any witnesses at the November 1st hearing and the Insurance Department orally argued that this Court is without jurisdiction to enjoin its license revocation activities in light of 15 U.S.C. § 1012(b).

In order to consider the jurisdictional argument, the Court continued the temporary restraining order to November 11, 1990 and gave both parties until November 5, 1990 to submit any memoranda of law.

## ARGUMENTS

Debtor alleges that his financial difficulties were due to problems with a previous business partner, presumably Reistrom, and he acknowledges that a number of premiums which had been collected were not paid over to various insurance companies, presumably including Middlesex. (See Application of David Pelland dated October 26, 1990 at para. 2).

Debtor further contends that while Middlesex did not object to his plan and filed a proof of claim in the Chapter 13 case, it also filed a complaint with the Insurance Department and in doing so violated Code § 362 by "attempting to collect from the Debtor sums scheduled in this proceeding." *Id.* at para. 5.

Finally, Debtor argues that even though he has the right to appeal the decision of the Insurance Department, a revocation of his license in the interim will result in irreparable injury which will lead directly to a default under his Chapter 13 plan. *Id.* at para. 8.

At oral argument, Debtor pointed out that he has received an offer for the sale of his insurance business which is being noticed to creditors and will be heard by this Court at its November 20, 1990 motion term at Syracuse, New York. From the proceeds of the sale, Debtor asserts that he will be able to accelerate payments under his plan to all creditors including Middlesex.

The Insurance Department confirms that its investigation of the Debtor was initiated as a result of a complaint filed by Middlesex on March 17, 1988, approximately a year prior to Debtor's filing. The complaint alleged that Debtor, doing business as "Oneida Lake Insurance Agency," had collected premium payments from insureds and failed to remit the payments to Middlesex.

The Insurance Department acknowledged that a hearing was held on May 18, 1990 apparently as a result of the Middlesex complaint and subsequent investigation, though it is not clear why some two years elapsed between the date of the complaint and the date of the hearing. As indicated, the Insurance Department has attached a copy of this Hearing Officer's Report and Recommendations to the affidavit of Nancy E. Schoep, Esq.

At oral argument, the Insurance Department argued that this Court was without jurisdiction in light of 15 U.S.C. § 1012(b), that its actions were excepted from the Code § 362(a) stay pursuant to Code § 362(b)(4) and (5), that Debtor's obligation due and owing to Middlesex was non-dischargeable by virtue of Code § 523(a)(4) and that allowing the Debtor to avoid regulation by the Insurance Department would set a dangerous precedent.

## DISCUSSION

■ The Court notes initially that the Debtor's motion insofar as it seeks a "temporary injunction" pending the outcome of an appeal of the license revocation, is procedurally improper in that such relief should be sought within the framework of an adversary proceeding. See Bankruptcy Rule 7001(7).

The Court will proceed, however, to consider the merits in view of the Insurance Department's failure to object to the Debtor's procedural deficiencies and the apparent compliance with due process requirements. *See also* Federal Rule of Civil Procedure 8(f), made applicable by Bankruptcy Rule 7008, which provides that "pleadings shall be so construed as to do substantial justice."

The Insurance Department's initial thrust is aimed at this Court's jurisdiction in light of 15 U.S.C. § 1012(b) commonly known as the "McCarran–Ferguson Act" ("Act"). It is argued that as the Act, in effect, pre-empts the federal government from enacting any laws which "invalidate, impair, or supercede" any State's law regulating the "business of insurance", this Court's application of Title 11 of the United States Code to somehow interfere with the administrative procedures of the State Insurance Department constitutes a clear violation of the Act.

The phrase "business of insurance" as used in the Act has been examined by a number of courts in an effort to determine Congressional intent. Clearly the Act was intended to exempt insurance companies from federal antitrust laws in response to the Supreme Court's pronouncements in *United States v. South–Eastern Underwriters Assn.* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).

Additionally, the Act in exempting the business of insurance from federal regulation focused on the relationship between the insurer and the insured. In *Group Life & Health Ins. Co. v. Royal Drug Co.* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Supreme Court cited the legislative history of the Act for the proposition that, "[t]he relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement—these were the core of the business of insurance." *Id.* at 215, 99 S.Ct. at 1075.

One need not labor to fit the licensing of insurance agents within the phrase "business of insurance" and in fact in *Securities & Exchange Comm'n v. National Securities, Inc.* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), Justice Marshall observed that "the licensing of companies and their agents, ... are also within the scope of the Statute." *Id.* at 460, 89 S.Ct. at 568.

Thus, if the stay imposed by virtue of Code § 362(a)(1) can be construed as directly or indirectly interfering with a State's regulation of the licensing of insurance agents operating within that State, then it would appear that the Code runs afoul of the Act.

It is submitted, however, that Congress enacted § 362(b)(4) for the very purpose of excepting from the stay imposed by Code § 362(a)(1) the ability of governmental units to enforce their police or regulatory power. Thus, it is believed that § 362(b)(4) brings the Code into harmony with the Act insofar as the Act includes the licensing of insurance agents within the broad definition of "business of insurance" and the licensing of agents is a proper extension of the State Insurance Departments' police or regulatory power.

The Code § 362(b)(4) exception is not, however, limitless in its exemption of the police and regulatory powers of governmental units from the automatic stay. The exception has been interpreted to apply generally where the governmental action seeks "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." *See e.g., Donovan v. TMC Industries Ltd.* 20 B.R. 997, 1001 (N.D.Ga. 1982).

However, when the governmental unit seeks to go beyond the abatement of the prohibited or regulated activity and seeks monetary sanctions or where the enforcement of the police or regulatory power has as its goal the enforcement of prepetition obligations of a debtor, its actions are not excepted from the impact of the automatic stay. See *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383 (3rd Cir.1987); *EEOC v. McLean Trucking Co.,* 834 F.2d 398 (4th Cir.1987); *In re*

*Corporacion de Servicios Medicos Hosp.,* 805 F.2d 440 (1st Cir.1986); *Matter of Davis,* 74 B.R. 406 (Bankr.N.D.Ohio 1987) and *In re Rath Packing Co.,* 35 B.R. 615 (Bankr.N.D.Ia.1983).

It should also be pointed out that Code § 525(a) prohibits the revocation of a debtor's license where it can be shown that the revocation occurred "solely because such bankrupt or debtor is or has been a debtor under this title." *Rath Packing,* 35 B.R. at 618–19.

■ Considering the very limited facts of this case as presented to the Court by the parties it is difficult to conclude that the Insurance Department was seeking to protect the "health, safety and welfare" of the public as opposed to merely protecting the pecuniary interest of Middlesex when it revoked the Debtor's license to sell insurance. *See Corporacion de Servicios Medicos,* 805 F.2d at 445 n. 4.

The Insurance Department acknowledges that it first received a complaint from Middlesex on March 17, 1988 yet the instant administrative proceedings were not undertaken against the Debtor until approximately two years later when the Insurance Department issued the citation and notice of hearing. Within that two year period Debtor, on March 28, 1989, had filed this Chapter 13 proceeding in which he scheduled Middlesex as a creditor and invoked the stay pursuant to Code § 362(a)(1) as to any administrative action which could have been commenced before the filing of the Chapter 13 case.

At the May 18, 1990 hearing which Debtor failed to attend, his co-respondent, Reistrom, who was charged with the identical violation of Section 2120 of the New York Insurance Law, to wit: collection of premiums and failure to remit to Middlesex, agreed to pay, and did in fact pay, $10,017.57 to Middlesex. This amount was alleged to have been unremitted to Middlesex while the Debtor and Reistrom were partners.

As a result of the payment by Reistrom to Middlesex, the Hearing Officer recommended that the charge and specification against him be dismissed and his licenses be continued in full force and effect. As to the Debtor, however, the Hearing Officer concluded that he:

remains indebted to the Middlesex Insurance Company in the amount of $33,926.91 which represents the funds collected after June 10, 1987.

Consequently, based on the entire record, I find that Respondent Massenzio has demonstrated his untrustworthiness to act as insurance agent within the meaning and intent of Section 2110 of the Insurance Law.

(Hearing Officer's Report and Recommendation dated September 25, 1990). On October 3, 1990, the Report and Recommendation was approved and adopted by the Superintendent of Insurance.

From the foregoing, the Court is of the opinion that had the Debtor appeared at the May 18, 1990 hearing and agreed to pay Middlesex the $33,926.91 he, too, would have had the charges against him dismissed and his license continued in full force and effect.

While it is true that the Debtor was charged with two additional factual violations, to wit: issuing three bad checks to three insurance companies totalling $845.40 and doing business for six months under an unlicensed name, the Court is not dissuaded from its belief that had the Debtor paid Middlesex, his license would not have been revoked. If revocation is imposed in direct response to the Debtor's failure to pay a sum of money, as is found here, the Insurance Department has engaged in collection activities in violation of the automatic stay and which are not protected by Code § 362(b)(4). *See In re Colon,* 102 B.R. 421, 428 (Bankr.E.D.Pa.1989); *James v. Draper (In re James),* 112 B.R. 687, 706 (Bankr.E.D.Pa.1990).

It is also clear that the Insurance Department, at the time of the license revocation proceedings, was well aware of the Debtor's pending Chapter 13 case. The Hearing Officer specifically found that Middlesex had received a check in the sum of $994.15 from the Debtor's Chapter 13 trustee on or about January 9, 1990. (See Hearing Offi-

cer's Report and Recommendation at para. 4).

The Court is not prepared, however, to conclude that Debtor's license was revoked "solely because" he had filed a Chapter 13 petition and thus on the record before it, no violation of Code § 525(a) is found.

The Court does, however, conclude that the Insurance Department's action in revoking the Debtor's license was intended solely to protect the pecuniary interest of Middlesex and those actions are not, therefore, insulated from the effect of the Code § 362(a)(1) stay by virtue of either 15 U.S.C. § 1012(b) or Code §§ 362(b)(4) or (5).

The Court also must reject the Insurance Department's contentions that the debt due Middlesex is exempted from discharge by virtue of Code § 523(a)(4) in view of Code § 1328(a) or that application of the stay in the instant case would set a dangerous precedent. Quite the contrary, the Court believes that to allow a governmental unit to serve the purpose of an individual creditor by assisting it in the collection of a pre-petition debt in violation of Title 11 under the guise of police or regulatory powers would create serious limitations upon a federal statute never intended by Congress.

Finally, though not raised by the parties, the Court notes its consideration of whether this proceeding is distinguishable from *Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) and concludes that the decision herein is consistent with *Hoffman*. The Supreme Court stated that in order "to abrogate the States' Eleventh Amendment immunity from suit in federal court, ... Congress make its intention 'unmistakably clear in the language of the statute'" *Id.*, 109 S.Ct. at 2822. In *Hoffman*, the Supreme Court limited the scope of Congress' waiver of the States' sovereign immunity set forth in Code § 106(c)(2) to exclude "monetary recovery from the States." *Hoffman*, 109 S.Ct. at 2823. The Court further ruled that the waiver embodied in Code § 106(c)(2) did, however, apply more properly to "declaratory and injunctive relief than [to] monetary recovery." *Id.*

It is clear in the case at bar that the Debtor does not seek to recover monetary sums from the state agency, but rather seeks to enjoin its revocation of his insurance license. It is also clear that injunctive relief against a state is not a "monetary recovery" from the state which is violative of the Eleventh Amendment. *See Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 2466-69, 105 L.Ed.2d 229 (1989). Thus, Code § 106 operates as a waiver of the state agency's sovereign immunity under the Eleventh Amendment with regard to the injunctive nature of the relief sought herein by the Debtor. Accordingly, *Hoffman* does not require this Court to conclude that it is without jurisdiction over the Insurance Department.

Turning to the relief actually sought by the Debtor the Court notes that it is ill conceived at best. Debtor seeks a "temporary injunction" which simply stays the license revocation until he can appeal the decision of the Insurance Department. It is not clear what the Debtor intends to do in the event that he is unsuccessful on appeal.

The Court having found that it has jurisdiction and that the license revocation is neither protected by the 15 U.S.C. § 1012(b) nor Code §§ 362(b)(4) or 106, finds that the Insurance Department has violated the stay imposed by § 362(a)(1) and maintained pursuant to Code § 362(c)(2). Its action in revoking the Debtor's insurance license is, therefore, null and void. *See Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987); *Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125-26 (9th Cir.1989).

The temporary restraining order granted pursuant to Bankruptcy Rule 7065 is hereby terminated and the Debtor's motion for "temporary injunction" is also denied.

IT IS SO ORDERED.