**In re James T. NORTH and Teresa A. North, Debtors.**

**Bankruptcy No. 90–00258.**

United States Bankruptcy Court, D. Vermont.

March 8, 1991.

---

**3.** The Second Amended Pretrial Order on Objection to The Petition, dated July 2, 1991, provides:

(a) Lists of witnesses with a statement of the testimony of each shall be exchanged and filed by July 2, 1991.

(b) Lists of exhibits with a copy of each shall be delivered to opposing counsel and filed by July 8, 1991; objections to exhibits shall be delivered to opposing counsel and filed by July 10, 1991.

**594**

A. Pastor, Law Offices of Raymond J. Obuchowski, Bethel, Vt., Trustee for James T. North and Teresa A. North (Dr. North).

S. Walton, Esq., Office of Professional Regulation, Vermont Secretary of State,

and D. Cardozo, III, Vermont Dept. of Taxes, Montpelier, Vt., for James H. Douglas, Vermont Secretary of State, Rita C. Knapp, Director, Office of Professional Regulation, and Vermont Bd. of Chiropractic Examination and Registration (Bd.).

## MEMORANDUM OF DECISION ON MOTION FOR SANCTIONS [1]

FRANCIS G. CONRAD, Bankruptcy Judge.

Dr. North seeks sanctions [2] against Board for violation of the Bankruptcy Code's automatic stay because Board refuses to stay its pre-petition administrative Order suspending Dr. North's Chiropractic license for non-payment of pre-petition state taxes. Thus, we hold Board's license suspension Order is stayed from taking effect post-petition under 11 U.S.C. §§ 362(a)(1) [3] because the plain purpose of Board's Order is to comply with Vermont's Tax Commissioner's statutory direction to suspend Dr. North's license as a means to enhance the state's coffers. Pecuniary collection activity is not excepted from stay under 11 U.S.C. § 362(b)(4). [4] This is the classic case of "if it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck."

On April 4, 1990, Board issued an Order suspending Dr. North's license to practice chiropractic medicine. Board's Order ensued from the Tax Commissioner's February 9, 1990 letter enlisting Board's suspen-

---

1. We have jurisdiction to determine this matter under 28 U.S.C. § 1334(b), and under the general reference to this Court. Automatic stay determination is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (G) and (O). This Memorandum of Decision constitutes conclusions of law under F.R.Civ.P. Rule 52 as made applicable by Practice and Procedure in Bankruptcy Rule 7052.

2. 11 U.S.C. § 362(a), (h) provides:
 (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

3. 11 U.S.C. § 362(a), **Automatic stay,** provides in pertinent parts:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301,

302, or 303 of this title ... operates as a stay, applicable to all entities, of—
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

4. 11 U.S.C. § 362(b)(4) provides § 362(a)(1) of the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power...."

sion of Dr. North's license because Dr. North owed State taxes and charges in the amount of $9,799.17 since 1984. As stated by Board:

This action was brought under 32 V.S.A. § 3113(f),[5] which requires a board to suspend or revoke a license if it finds that state taxes have not been paid and are not under appeal.... Having found the nonpayment, the Board is left with little choice; it must either suspend or revoke the license until the taxpayer is in good standing with the Tax Department.

... The statute deprives taxpayers of a valuable privilege if they owe back taxes and have not made a satisfactory arrangement to pay them. Loss of the valuable privilege makes payment of the taxes even harder. The statute may be harsh, even draconian, but it is rational. Loss of license creates a powerful incentive to pay back taxes. Moreover, the statute is clear; suspension or revocation must follow a finding of unpaid taxes, if requested by the Commissioner of Taxes.

*In re James T. North, DC, License No. 651,* Docket No. CD03–0290, pages 2–3 (Vermont Board of Chiropractic Examination and Registration, Order April 4, 1990).

**5.** 32 Vt.Stat.Ann. § 3113(f), **Requirements for obtaining license or governmental contract,** provides:

(f) Upon written request by the commissioner and after notice and hearing to the licensee as required under any applicable provision of law, an agency shall revoke or suspend any license or other authority to conduct a trade or business (including a license to practice a profession) issued to any person if the agency finds that *taxes administered by the commissioner* have not been paid and that the taxpayer's liability for such taxes is not under appeal. For purposes of such findings, the written representation to that effect by the commissioner to the agency shall constitute prima facie evidence thereof. The commissioner shall have the right to intervene in any hearing conducted with respect to such license revocation or suspension. Any findings made by the agency with respect to such license revocation or suspension shall be made only for the purposes of such proceeding and shall not be relevant to or introduced in any other proceeding at law, except for any appeal from such license revocation or suspension. Any license or certificate of authority suspended or revoked under this section shall not be reissued or renewed until the agency receives a certificate issued by the commissioner that the licensee is in good standing with

Board's Order stated the suspension was effective "45 days after the date of [its] order, [May 19, 1990] and continuing until the Board receives a certificate of good standing from the [Tax Commissioner]." The effective date of the suspension occurred after Dr. North's Chapter 7 bankruptcy filing on May 16, 1990. 11 U.S.C. §§ 101, *et seq.*

Board's Order further stated its ruling would become final on May 4, 1990 upon the expiration of the appeal period. Dr. North did not appeal Board's Order.

On May 17, 1990, Dr. North's attorney notified the Tax Department, by letter and FAX transmission, of the May 16, 1990 bankruptcy filing. The May 17, 1990 letter proposed 4 monthly payments of $300.00 toward the outstanding non-dischargeable taxes totaling $1,125.73[6] in exchange for a "Certificate of Good Standing"[7] from the Tax Department before Dr. North's suspension was to take effect. The Tax Department agrees that any state taxes owed by Dr. North prior to 1987 are dischargeable, and the May 17, 1990 letter qualifies as a good faith proffer for a "payment plan"

respect to any and all taxes payable to the commissioner as of the date of issuance of such certificate. Any person aggrieved by the decision of the agency may appeal therefrom in accordance with the provisions of chapter 25 of Title 3.

**6.** The Tax Department agrees that any state taxes owed by Dr North prior to 1987 are dischargeable because of the Chapter 7 filing.

**7.** 32 Vt.Stat.Ann. § 3113(g) provides:

(g) For purposes of this section, a person is in good standing with respect to any and all taxes payable if:
(1) no taxes are due and payable;
(2) the liability for any taxes due and payable is on appeal;
(3) the person is in compliance with a payment plan approved by the commissioner; or
(4) in the case of a licensee, the agency finds that requiring immediate payment of taxes due and payable would impose an unreasonable hardship.
If the agency finds an unreasonable hardship, it may condition renewal on terms which will place the person in good standing with respect to any and all taxes as soon as reasonably possible.

for "good standing" under 32 Vt.Stat.Ann. § 3113(g). But no action was taken on this good faith offer.

In response to the suspension, Dr. North filed a motion for sanctions under 11 U.S.C. § 362 against Board. Dr. North asserts the sole purpose of Board's action is to collect taxes for the state. Dr. North claims full compliance with Board's supervisory and disciplinary provisions under 26 Vt.Stat.Ann. §§ 421 through 510, including § 505.[8] Nonpayment of taxes is not one of the reasons Board may suspend his license. Moreover, Dr. North argues, Board's suspension of Dr. North's license does not protect Vermont's public welfare.[9]

Board asserts several arguments and defenses for its action. First, Board says it took no affirmative action against Dr. North after it issued the April 4, 1990 suspension Order. Second, the license suspension qualifies for the "governmental unit"[10] exception of 11 U.S.C. § 362(b)(4). Third, and asserting a § 108 defense,[11]

---

**8.** 26 Vt.Stat.Ann. § 505 contains the grounds for disciplinary proceedings against chiropractors:

(a) Upon notice to the individual affected, and after a hearing at which time he shall be given an opportunity to be heard, the board may refuse to issue a license or may suspend or revoke any license issued by the board, or may otherwise discipline a licensee for any of the following reasons:

(1) Immoral, unprofessional or dishonest conduct;

(2) False or fraudulent representation of the profession to obtain practice or money or other thing of value, or for any other purpose;

(3) Use of an assumed name;

(4) Conviction of the practice of criminal abortion, or of any offense involving moral turpitude. The record of such conviction shall be conclusive evidence of guilt;

(5) Physical or mental disability, or the presence of other conditions to the extent that continued practice would be dangerous to the public;

(6) Confirmed addition to the use of drugs or habitual intoxication;

(7) Advertising of chiropractic which intended or has a tendency to deceive the public or impose upon credulous or ignorant persons and so is harmful or injurious to the public morals or safety.

(b) The procedure of the Administrative Procedure Act shall be available to any individual adversely affected by an order under this section.

(c) A chiropractor whose license has been suspended can be reinstated only by a majority vote of the board of examiners and upon payment of a reinstatement fee not to exceed $200.00.

**9.** 26 Vt.Stat.Ann. § 505, footnote 8, *supra. See e.g.,* 26 Vt.Stat.Ann. § 3101, **Policy and purpose,** behind Vermont's regulation and licensing professions:

It is the policy of the state of Vermont that regulation be imposed upon a profession or occupation solely for the purpose of protecting the public....

32 Vt.Stat.Ann. § 3113(b) provides:

No agency of the state shall renew any license or other authority to conduct a trade or business (including a license to practice a profession) to, or enter into, extend or renew any contract for the provision of goods, services or real estate space with, any person unless such person shall first verify in writing, under the pains and penalties of perjury, that the person is in good standing with respect to or in full compliance with a plan to pay, any and all taxes due as of the date such statement is made.

**10.** 11 U.S.C. § 101(26) defines "governmental unit:"

(26) 'governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic governments;

Section 101(26)'s legislative history indicates: 'Department, agency, or instrumentality' does not include entities that owe their existence to State action such as the granting of a charter or a license but that have no other connection with a State or local government or the Federal Government. The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977); U.S.Code Cong. & Admin.News 1978, 5787, p. 6268; S.Rep. No. 989, 95th Cong., 2d Sess. 24 (1978).

**11.** 11 U.S.C. § 108, **Extension of time,** provides in part:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

Board says the period of time between when its Order became final pre-petition and the post-petition effective suspension date is a "mere running of time" that is not subject to the automatic stay. Moreover, there was nothing left for Dr. North to cure. Alternatively, if § 108(b) applies, Dr. North lost whatever protection § 108(b) provides because the trustee failed to invoke § 108(b) within 60 days of Dr. North's bankruptcy.[12] Fourth, Board acknowledges that § 362's legislative history [13] indicates license revocation proceedings are subject to the automatic stay. But, it points out 32 Vt.Stat.Ann. § 3113(f) is a

valid exercise of Board's policy and regulatory powers, and thus, Dr. North's license suspension is excepted from the stay under § 362(b)(4).[14] The interplay between the tax and the professional regulation statutes, Board claims, evinces a comprehensive regulatory scheme to protect public safety by encouraging the financial responsibility of licensed professionals.

■ Board also claims there is nothing for the automatic stay to stop after the appeal period expired pre-petition because Dr. North's license is not property of the estate.[15] Finally, and asserting a Nurem-

---

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 60 days after the order for relief.
(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

**12.** "After May 4, [1990] the only event associated with [Order] was the mere running of time until the suspension became effective. Because [Dr. North] failed to appeal, his license was and would have been suspended automatically on May 19, [1990] regardless of any action taken by him or anyone else. Even if he had paid his overdue taxes before that date [May 19, 1990] his license would have been suspended automatically and would not have been re-issued or renewed until the board received a certificate of good standing from the Tax Commissioner.

"The 45 days grace period granted by the Board's order merely permitted debtor and his patients to effect an orderly termination of chiropractic treatment if debtor failed to appeal or to request a stay pending appeal. The effective date of the Board order did not represent an enlarged window of time in which debtor could pursue other means to avoid professional discipline. The time period to which subsection 108(c) applies expired May 4, 1990. Therefore, debtors' May 16 [1990] bankruptcy petition was

filed too late to permit application of that subsection to this case."
Board's Memorandum of Law, p. 2.

**13.** 11 U.S.C. § 362(a)(1)'s legislative history states in part:
Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the case. The commencement or continuation, including the issuance of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed under paragraph (1). The scope of this paragraph is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings....
H.R.Rep. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong., & Admin. News pp. 5787, 6297; S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* U.S.Code Cong., & Admin.News at 5836.

**14.** Board's "Memorandum of Law" states:
Here, 32 V.S.A. Sec. 3113(f) can be seen as not merely a collection statute but rather as an integral part of legislative intent to regulate licensees and protect the public welfare. A professional practitioner with delinquent taxes does not inspire confidence in the public. Falling behind in tax payments carries more than a whiff of financial irresponsibility. A practitioner who fails to make tax payments may also fail to keep current in the latest professional techniques, or may fail to purchase or repair equipment when needed.
When combined with Title 26 of the Vermont Statutes (Professions and Occupations), Section 3113(f) therefore represents a valid exercise of the Board's police and regulatory power to protect public safety by encouraging financial responsibility.

**15.** 11 U.S.C. § 541(a)(1), **Property of the estate,** provides:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an

berg defense, Board says sanctions are inappropriate where it had no discretion but to act as directed by the Tax Department.[16]

Dr. North's post-hearing memorandum raised two new arguments. First, in the event we hold the automatic stay prevented Board's Order from taking effect post-petition, then Board violated 11 U.S.C. § 108(c) by their "enforcement" of its Order three (3) days after Dr. North filed bankruptcy, when the license became property of the estate. Instead, Dr. North claims Board's enforcement "should have been stayed at least 30 days after the notice of termination or expiration of the stay under Section 362." Second, in the event we were to hold Board did not violate the automatic stay, Board is nevertheless enjoined from suspending Dr. North's license under 11 U.S.C. § 108(b) because Dr. North's license became property of the estate before the effective date of the suspension and the bankruptcy trustee had 60 days thereafter to determine what options to pursue with respect to that asset. Thus, Board violated § 108(b) "by continuing with its intention to suspend Dr. North's license within 3 days of his declaration of bankruptcy."

Dr. North's motion presents four issues: (1) Does any section of § 108 apply, (2) what is the scope of § 362(a)(1) as it applies to Dr. North, (3) does § 362(a)(1) require an affirmative act, and (4) does § 362(b)(4)'s "governmental unit" exception apply?

The factual posture of this motion, as presented by the parties, has placed us in a quixotical frame of thought because we can imagine various outcomes of Dr. North's case despite our ruling.

■ It is clear that only a limited subsection of § 108 applies here, regardless of the efforts of either Board or Dr. North to

convince us otherwise. Before the filing of Dr. North's Chapter 7 petition, there was little he could do under applicable non-bankruptcy law to stay the tax collection activity, a/k/a the license suspension. The State, in the wisdom of its legislature, deems it appropriate to suspend professional licenses for the non-payment of taxes. As the Board stated, the statute may be harsh, even draconian, but it is rational. Outside of bankruptcy the loss of a professional license creates a powerful incentive to pay back taxes. As a Court, we have no right to challenge or change that wisdom.

Any appeal of Board's suspension passed because Dr. North did not appeal the Order.

Dr. North's next step, under applicable nonbankruptcy law, if he so chose, was to negotiate a payment plan under 32 Vt.Stat. Ann. § 3113(g). He could have exercised that right under State law or under Federal bankruptcy law. We can only speculate about why Dr. North chose to exercise his § 3113(g) rights in bankruptcy because we are not informed about his reasons for so doing. We are aware that Dr. North had a previously failed Chapter 13 case. His Chapter 7 filing was probably inevitable. Outside of bankruptcy, a § 3113(g) payment plan would be onerous.[17] Inside of bankruptcy, enhanced by the discharge of personal obligations and the majority of his tax debt, a § 3113(g) payment plan would be more manageable.

Board claims there was nothing left to be done in this matter but let the suspension go into effect. This claim misses the mark. Section 3113(g) provides for a "payment plan." There was something the Tax Department could have done, it could have chosen to act either negatively or affirma-

estate. Such estate is comprised of all the following property, wherever located and by whomever held:

 (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

16. We do not address this argument in our Decision because it is unnecessary to decide it. We point out that Board has discretion under 32 Vt.Stat.Ann. § 3113(g). It need not be bound by

the inmalleable strictures of the Tax Department, but rather, it may do some legal manipulation on its own.

17. Dr. North's suspension invokes the plight of the bombardier in Joseph Heller's *Catch 22* (1961) who couldn't get out of the Army on the basis of insanity because his desire to get out proved he was sane. The loss of Dr. North's professional license reduces the likelihood of having the resources to pay back his tax debts.

tively on Dr. North's May 17, 1990 letter. It chose to do nothing. Whether its choice was inadvertent or intentional we don't know. The only fact we have before us is that nothing was done by the state on the attempted exercise of a state granted right.

Upon the filing of the Chapter 7 petition, the State of Vermont's rights changed. Instead of the pre-petition position vis a vis the owed taxes, its post-petition position is that of unsecured creditor for most of the taxes and a non-discharged obligee for those taxes not discharged in bankruptcy. But the collection on those non-discharged taxes must wait 30 days after notice of the termination or expiration of the automatic stay under § 362. If we were to hold otherwise we would be faced with the anomalous position of the automatic stay and the permanent injunction of § 524 being enforceable against the state post-petition and post-discharge for those taxes that are dischargeable but not have § 362 being in effect post-petition/ante-discharge for those taxes that are not dischargeable. This position would lay waste the protections afforded by the Bankruptcy Code. Moreover, we know of no case where a claimant may attempt to collect nondischarged debts without first seeking relief from the automatic stay under § 362(d), or they must wait until the entry of a § 524 discharge. Thus, we hold that § 108(c)(1) applies to Dr. North's license suspension for failure to pay taxes.

Having held that § 108(c)(1) applies to this matter, we turn our attention to the scope of the automatic stay as it pertains to Dr. North.

There is no doubt the automatic stay protects § 541 property of the estate to prevent the unsupervised dismemberment of the estate through a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *LTV Steel Company, Inc. v. Board of Education of Cleveland City School District (In re Chateaugay Corp., Reomar, Inc.)*, 93 B.R. 26, 30 (S.D.N.Y.

1988) (*quoting, Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 55 (2d Cir.1976) *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)).

■ Contrary to Board's understanding, however, the automatic stay is not limited to estate property. A literal reading of the subsections of § 362(a) supports an interpretation that the majority of those subsections protect either debtors or debtors' property. Only two of eight subsections under § 362(a) expressly require the presence of estate property; namely, §§ 362(a)(3) and (a)(4). Sections 362(a)(1), (5), (6), (7) and (8) protect debtors. Moreover, § 362(a)(2) stays enforcement of a pre-petition judgment against either debtors or property of the estate.

■ To simply limit the scope of the automatic stay to estate assets and not to a debtor when appropriate circumstance otherwise demands such protection not only defeats a literal reading of the applicable subsections of § 362(a) but also frustrates Congress's purpose behind the automatic stay. The automatic stay "give[s] the debtor a breathing spell from his creditors," and "permit[s] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." S.Rep. No. 95–989, 95th Cong., 1st Sess. 54–55, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840–41. *See also*, H.Rep. No. 95–595, 95th Cong., 1st Sess. 340–41, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6296–97. We hold § 362(a)(1) protects Dr. North because he is a debtor and the State's action interferes with Dr. North's "breathing spell" under the Code. Our holding makes it unnecessary to decide if Dr. North's license is property of the estate.

■ It is black letter law that administrative licencing revocation proceedings are subject to the automatic stay. Section 362(a)(1)'s legislative history indicates the stay applies to "arbitration,[18] license revo-

---

18. *But see, Shugrue v. Airline Pilots Association, (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984

(2d.Cir.1990) (Second Circuit ruled Congress intended 11 U.S.C. § 1113(f) to be the sole method

cation, administrative, and judicial proceedings ..." Board's argument is § 362(a)(1) does not stay the mere "running of time" that lapsed between the pre-petition date Board's Order became final and the post-petition date the license suspension was to take effect. This is their "passive act" argument.

The Second Circuit in *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Association, Inc.),* 880 F.2d 1540 (2d Cir.1989), *cert. denied, Suffolk County Treasurer v. Parr Meadows Racing Association, Inc.,* —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990), assumed, as an alternative holding, a post-petition tax lien could be created by operation of law and perfected without any "affirmative act," but nevertheless held that such a lien violates § 362(a)(3):

> In short, the county's first argument, that the tax liens here were created without 'action' and thus did not violate the automatic stay, interprets the provisions of § 362(a) too narrowly and misconstrues congress's intent when it included local governments among the entities subject to the automatic stay.

*Id.,* 880 F.2d at 1546. Although the factual circumstances in the proceeding *sub judice* are different than in *Parr,* we discern no significant reason why the rationale of *Parr's* analysis under § 362(a)(3) would not also require a rejection of an "affirmative act" requirement in § 362(a)(1). The *Parr* Court had no trouble in ruling out an "affirmative act" requirement despite § 362(a)(3)'s literal requirement of an "act." [19] The operative language in § 362(a)(1) is much broader than in § 362(a)(3).

Assuming, *arguendo,* § 362(a)(1) required an affirmative act, the "hostage" status of Dr. North's license is in essence an indirect post-petition affirmative act by Tax Department to collect on its pre-petition tax claim. While Board's Order does not involve a *per se* creation or perfection of a post-petition lien as was involved in *Parr,* Board's Order, if permitted to take effect post-petition, suspends Dr. North's license until Tax Commissioner issues a certificate of "good standing" because of tax payment or acceptance of a tax payment plan. Thus, it is clear Board acts as Tax Department's agent for Tax Department's affirmative tax collection efforts. If we were to allow Board's Order to take effect post-petition, we would be permitting Tax Commissioner to recover post-petition a pre-petition monetary obligation against Dr. North at the expense of Dr. North's creditors.

█ The automatic stay is applicable to "all entities," both public and private.

> This equitable treatment requires that all creditors, both public and private, be subject to the automatic stay.... Recognizing this congress used broad language which prohibits "all entities," ... including all "governmental unit[s]," ... from moving against a debtor's property during the pendency of the bankruptcy proceedings....
>
> [I]f a bankruptcy court lacked such power, actions by local government "would pull out chunks of an estate from the reorganization court and ... [would] seriously impair the power of the court to administer the estate."

*Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Association, Inc.), supra,* 880 F.2d at 1545.

█ Section 362(b)(4) excepts certain public entities, known as "governmental units," from the automatic stay if their actions are designed to enforce police or regulatory powers. Not every governmental unit's power is excepted, however, as 11 U.S.C. § 362(b)(4)'s legislative history explains:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a

---

by which a debtor could terminate or modify a collective bargaining agreement; thus, the automatic stay would not prevent arbitration under the collective bargaining agreement).

**19.** 11 U.S.C. § 362(a)(3) provides:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over the property of the estate;

governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.

H.R.Rep. 595, 95th Cong., 1st Sess. 342–43 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51–52 (1978), *reprinted in* [1978] U.S.Code Cong., and Admin.News 5787, 5837, 5838, 5963, 6299. 11 U.S.C. § 362(b)(4)'s Congressional Record Statements (Reform Act of 1978) adds:

> Section 362(b)(4) indicates that the stay under section 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. H11092 (daily ed. Sept. 28, 1978); S17409 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini). Thus, for purposes of § 362(b)(4) in the proceeding *sub judice*, there are two groups of police or regulatory actions; namely, those that seek to protect public's safety, health, and welfare, and those that protect the public's pecuniary interests. The latter group is not excepted from the stay under § 362(b)(4); instead, the pecuniary group must either establish cause for relief from the automatic stay or participate in debtor's bankruptcy like any other claimant.

■ Examples of state regulatory licensing schemes that meet § 362(b)(4)'s "governmental unit" exception include police or regulatory actions motivated to protect public health and safety. *See, e.g., Wade v. State Bar of Arizona (In re Wade),* 115 B.R. 222, 228 (9th Cir. BAP 1990) (Post-petition disciplinary proceeding by state bar against an attorney, for reasons not disclosed, was excepted from stay under § 362(b)(4) because the purpose of attorney discipline was to protect the public and not to serve any pecuniary interest); *Thomassen v. Division of Medical Quality Assurance, Department of Consumer Affairs, State of California (In re Thomassen),* 15 B.R. 907, 909–910 (9th Cir. BAP 1981) (post-petition license revocation was excepted under § 362(b)(4) because, aside from doctor's failure to return certain insurance overpayment and failure to pay salaries of employees, revocation was needed to prevent doctor's malpractice and professional incompetence); *Christmas v. Maryland Racing commission (In re Christmas),* 102 B.R. 447, 460–461 (Bkrtcy.D.Md.1989) (post-petition revocation of debtor's license as a horse trainer for failure to establish prospective financial responsibilities was excepted from stay under § 362(b)(4) to avoid corruption); *Beker Industries Corp. v. Florida Land and Water Adjudicatory Commission (In re Beker Industries Corp.),* 57 B.R. 611, 628–630 (Bkrtcy.S.D.N.Y.1986) (state's post-petition revocation of debtor's license to transport phosphate rock by truck to protect off-site impact from mining operation was valid regulatory exercise); *Matter of Alessi,* 12 B.R. 96, 98 (Bkrtcy.N.D.Ill.1981) (horse racing debtor's pre-petition bad checks, substantial indebtedness and gambling debts excepted racing board's post-petition denial of license under § 362(b)(4)).

Examples of where § 362(b)(4)'s "governmental unit" exception will not apply in a licensing context occur where the questioned action seeks to enhance pecuniary interests such as payment of taxes or fulfillment of some other monetary requirement as a prerequisite for a license renewal. *See, e.g., In re Hoffman,* 65 B.R. 985, 988–989 (D.R.I.1986) (Section 362(b)(4) did not permit state tax authority to condition the post-petition transfer of debtor's liquor license on payment of pre-petition delinquent taxes); *In re Massenzio,* 121 B.R. 688 (Bkrtcy.S.D.N.Y.1990) (Insurance company filed pre-petition complaint before a state insurance department because of debtor's failure to remit pre-petition insurance premiums to the insurance company.

State insurance department revoked debtor's insurance license post-petition. Court held the license revocation was not excepted from stay under § 362(b)(4) because it was designed to protect insurance company's pecuniary interest); *Shimer v. Fugazy (Matter of Fugazy Express, Inc.)*, 114 B.R. 865, 873 (Bkrtcy.S.D.N.Y.1990) (FCC was stayed from rendering any administrative cancellation of radio call sign license); *St. Louis South Park II, Inc. v. Missouri Health Facilities Review Committee (In re St. Louis South Park II, Inc.)*, 111 B.R. 260 (Bkrtcy.W.D.Mo.1990) (Missouri's post-petition declaration of forfeiture of debtor's certificate of need because of failure to meet required capital expenditures does not meet § 362(b)(4) exception to stay); *Nejberger v. Pennsylvania Liquor Control Board (In re Nejberger)*, 112 B.R. 714, 722 (Bkrtcy.E.D.Pa.1990) (liquor control board's requirement of tax payments before renewal of license was not excepted from stay under § 362(b)(4)), *vacated and remanded on other grounds, In re Nejberger*, 120 B.R. 21, 24 (E.D.Pa.1990) (Bankruptcy Court should have enjoined liquor board from refusing to renew debtor's license instead of ordering board to renew the license. Section 362(b)(4) issue was not preserved on appeal. *Id.*, 120 B.R. at 23, n. 5); *Aegean Fare, Inc. v. Licensing Board for the City of Boston (In re Aegean Fare, Inc.*, 35 B.R. 923, 927–28 (Bkrtcy.D.Mass. 1983) (Section 362(b)(4) did not permit state tax authority to refuse to renew debtor's liquor license unless debtor paid pre-petition delinquent taxes); *Pizza of Hawaii, Inc. v. Department of Taxation, State of Hawaii (In re Pizza of Hawaii, Inc.)*, 12 B.R. 796, 799 (Bkrtcy.D.Ha.1981) (same).

 Courts must find the balance between giving deference to a governmental unit's unsupported explanation that its actions serve public safety, health, and welfare and to demanding proof to avoid self-serving declarations. As the proceeding *sub judice* demonstrates, the balance against deference shifts in favor of demanding proof of public safety purpose when it is obvious the plain purpose is to serve a pecuniary interest.

Board's attempt to salvage the obvious pecuniary motivation behind its Order with a public safety argument fails miserably. Board offers no independent evidence of any legislative intent to support its self-serving argument of a possible interplay between 32 Vt.Stat.Ann. § 3113(f) and 26 Vt.Stat.Ann. §§ 421–510. Board failed to contradict the statute's plain meaning. A cursory reading of 32 Vt.Stat.Ann. § 3113(f) and 26 Vt.Stat.Ann. §§ 421–510 reveals the reason for the absence of such evidence. As admitted to by the express language of Board's Order, the sole purpose behind 32 Vt.Stat.Ann. § 3113(f) is to force a licensee to pay taxes. Neither nonpayment of taxes nor financial responsibility constitutes an enumerated ground for discipline under 26 Vt.Stat.Ann. § 505. We conclude § 3113(f) is a mere pecuniary procurement device that has nothing to do with the discipline of licensees. If we were to except Board's Order from the automatic stay through § 362(b)(4) under these circumstances, we would be authorizing the Tax Department's post-petition enforcement of its pre-petition tax claim at the expense of Dr. North's other unsecured creditors. We will not grant a § 362(b)(4) stay exception to a creditor to enhance its pecuniary interest indirectly that it is forbidden to accomplish directly. Board's Order is not excepted from the § 362(a)(1) stay under § 362(b)(4).

 Having ruled Board's Order is not excepted from § 362(a)(1) under § 362(b)(4), we must now decide what, if any, damages are appropriate. Our task here is brief because there is not enough evidence to support a willful violation of the automatic stay against Board and, accordingly, we hold § 362(h) is not applicable.

Ordinarily, our holding would leave Dr. North's license intact until the automatic stay terminates. To realize on its nondischargeable tax claim, the Tax Department will have to participate directly in Dr. North's bankruptcy like any other pre-petition claimant.

 Given the unusual circumstance of this proceeding, however, we exercise our powers of equity to fashion a more appro-

priate remedy for all of the parties. 11 U.S.C. § 105(a).[20] As conceded by the Tax Department, Dr. North's filing of a bankruptcy petition resulted in the discharge of approximately 85% of taxes owed. Dr. North sought to take advantage of the greatly reduced taxes and proposed a "payment plan" to the Tax Department for the nondischarged taxes. It is obvious the parties have not negotiated a payment plan while awaiting our Decision. To promote negotiation, we limit the continuation of the automatic stay to 90 days from the date of the entry of our Order, and set this matter for a status conference in 60 days to give Dr. North an opportunity to obtain, a certification of "good standing." If the parties are unable to report on their acceptance of a payment plan, or if Dr. North fails to comply with the terms of an accepted payment plan, then the stay shall be lifted 90 days from the entry of our Order or 10 days after he fails to comply with any payment plan.

---

**20.** 11 U.S.C. § 105(a), **Power of Court,** provides in pertinent part:

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.