**In re Donald W. WEST, Debtor.**

**Edmond J. E'CHAVARRIE & Telecom Marketing Group, Plaintiffs,**

v.

**Donald W. WEST, Defendant.**

**Bankruptcy No. 92 B 02938.
Adv. No. 93 A 00386.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 13, 1993.

---

7. At the time of the *Rosenow* decision, what is now Section 507(a)(7) was codified as Section 507(a)(6).

Benjamin Nortman, Holleb & Coff, Chicago, IL, for plaintiffs.

Erica Crohn Minchella, Chicago, IL, for debtor/defendant.

### FINDINGS OF FACT & CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on Plaintiffs' motion for summary judgment on their complaint, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (6), to determine the dis-

chargeability of a debt owed to them by the Debtor. The debt, in the amount of $226,-849.40, plus post-judgment interest, arises from a judgment entered in the Los Angeles Superior Court on January 17, 1989 (the "Judgment"), as modified by a settlement agreement, dated February 2, 1989 (the "Settlement Agreement"), and an Order Modifying Judgment and Awarding Sanctions, filed March 13, 1990 (the "Modification Order"). Having considered the arguments, pleadings and exhibits, and the orders and findings of the state court, the Court grants the motion for summary judgment.

The Court's jurisdiction to hear this matter derives from 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core matter under 28 U.S.C. § 157(b)(2)(I). All statutory references herein are to the Bankruptcy Code unless specified otherwise.

### BACKGROUND

The facts of this case are amply recited in the California appellate opinion, filed July 26, 1991, affirming the Modification Order and attached as Exhibit D to Plaintiffs' motion. E'Chavarrie developed an idea for a marathon (the "Run") along the Great Wall of China, the proceeds of which would be donated to charities. He formed the Sports For Peace Foundation ("SFPF") in September, 1987, to put this idea into action. Early in 1988, the Debtor became involved, contributing $90,000 to the project and becoming a director of SFPF. After making his capital contribution, he set about wresting control of the project and SFPF from E'Chavarrie. To that end, in September, 1988, the Debtor brought an action in California state court against E'Chavarrie, SFPF, and two other former directors. On September 23, 1988, in open court, the parties stipulated to the terms of a settlement, wherein the rights and obligations of the parties with respect to SFPF and the Run were set forth. As early as November or December, 1988, after he stipulated to the settlement agreement but before the terms thereof were entered in the Judgment, the Debtor began to strip SFPF of its assets and transfer them to International Sports Foundation ("ISF"), a company, eventually incorporated on April 25, 1989, he formed to carry out the project. On January 12, 1989, a hearing was held wherein the Debtor, representing himself, raised objections to the form of the judgment. His objections were overruled, and on January 17, 1989, the Judgment was entered, reflecting the terms agreed to at the September 23 hearing. The Judgment provided that in return for gaining control of SFPF, including the rights to the Run and any books, records and materials pertaining thereto, the Debtor, as chairman of SFPF, was required to accord E'Chavarrie credit, in advertisements, stationery and publications, as the creator of the Run, and to cause SFPF to pay (1) E'Chavarrie up to $100,000 for expenses he had incurred on behalf of the project, subject to satisfactory substantiation for such expenses, and (2) $100,000 to Telecom Marketing Group ("TMG"), a company in which E'Chavarrie had an interest, as payment for services it rendered on behalf of the project.

Shortly after the Judgment was entered, the Debtor objected to paying E'Chavarrie the full $100,000, as he was entitled to do under the terms of the Judgment. The parties then entered into the Settlement Agreement on February 2, 1989, liquidating the amount due E'Chavarrie personally to a sum certain of $75,000, bringing the total amount due under the Judgment to $175,000. On March 13, 1990, on Plaintiffs' motion to modify judgment, the trial court entered an order modifying the Judgment *nunc pro tunc,* (1) adding the Debtor and ISF as judgment debtors (having determined that they were the alter egos of SFPF), and (2) awarding sanctions against the Debtor, in the amount of $51,849.40, payable to E'Chavarrie for attorneys' fees he had incurred throughout the proceedings. Donald Farnham submitted a declaration in the state court proceedings in support of the motion to modify judgment, attached to Plaintiff's 12(M) statement[1] as Exhibit I. He states in paragraph 13 there-

---

1. Statement of Uncontested Facts required by Rule 12(M) of the Rules of the U.S. District Court for the Northern District of Illinois.

in, with reference to the Debtor's conduct at the time of the September 23 hearing, that "Mr. West told me, in the hallway outside the courtroom, that he was going to accept that offer but that he would never actually have to pay anything or to give any credit to Mr. E'Chavarrie. Mr. West also told me that he would be able to get around whatever the judge did." Farnham continued in paragraph 15:

After the settlement was taken down by the court reporter, I exited the courtroom with Mr. West. In the hallway outside the courtroom Mr. West told me again that he would never have to actually pay anything under the settlement agreement and that he was going to print up a couple of pieces of Sports For Peace stationery with Mr. E'Chavarrie's name on it; that he planned to keep that stationery in his office and not use it; and that if Mr. E'Chavarrie ever complained about not receiving credit, Mr. West could simply pull out this stationery as proof that he had given Mr. E'Chavarrie credit.

The Debtor denies that the conversations between the Debtor and Farnham were "correctly reported," by the Plaintiffs, but does not specify how the reports are incorrect, does not offer any alternative accounts, and cites no material in support of his denials. The Modification Order states in part:

In awarding sanctions, the Court specifically finds, based on all of the evidence, that:

a. Donald W. West entered into a Settlement in open court with Edmond E'Chavarrie and others with the express concealed intention that Edmond E'Chavarrie and Telecom Marketing Group never obtain the benefits of said settlement;

b. Donald W. West used the processes of this court in bad faith solely to avoid and delay payment to Edmond E'Chavarrie and Telecom Marketing Group of the sums due under the Settlement reached in open court and under the Judgment of this Court;

c. Donald W. West knowingly, consciously, and in bad faith, with the sole intention to avoid and delay compliance with the Judgment ordering Donald W.

West to cause the Sports For Peace Foundation to pay to Edmond E'Chavarrie and Telecom Marketing Group the sums due under the Judgment, created another foundation styled "International Sports Foundation" in order to utilize the assets and undertake the business activities of Sports For Peace Foundation so as to leave Sports For Peace Foundation without any assets from which the Judgment could be satisfied and so as to avoid conferring credit to Edmond E'Chavarrie as creator of the China Run, as is required under the Judgment.

On October 3, 1991, a remittitur notice (the "Remittitur Notice") was issued by the Court of Appeals reflecting that the Modification Order was final. Plaintiffs seek a determination that $175,000, plus post-judgment interest thereon from January 17, 1989, and $51,849.40 in sanctions, plus post-judgment interest thereon from March 12, 1990, is nondischargeable.

The Debtor is an attorney licensed to practice in both Illinois and California. He was represented by the law firm of Latham & Watkins at the time he stipulated to the terms that were recorded in the Judgment. He represented himself *pro se* at a hearing on E'Chavarrie's motion to strike the Debtor's request for dismissal of his state court complaint, the hearing on objections to the form of the Judgment, at the time the Judgment was entered and at the time he entered into the Settlement Agreement. He was represented by an attorney, Brian Winn, at the hearing on the order modifying the Judgment and throughout the time it was upheld by the California Court of Appeals. This memorandum opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052. A separate order will be entered pursuant to Fed.R.Bankr.P. 9021.

## DISCUSSION

The question before the Court is whether there is a genuine issue of material fact as to whether the Debtor incurred a nondischargeable debt to Plaintiffs either by fraudulently obtaining property from them, under § 523(a)(2)(A), or by willfully and mali-

ciously causing injury to them, under § 523(a)(6). Summary judgment is proper if the pleadings, depositions, answers on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Bankr.P. 7056, incorporating Fed.R.Civ.P. 56(c); *Donald v. Polk County,* 836 F.2d 376, 378–79 (7th Cir.1988). The moving party has the burden to show that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). This burden is met when the record, as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Once the movant makes a prima facie showing that it is entitled to judgment as a matter of law, the respondents must show that there is a genuine issue and may not rest on mere allegations or denials in its pleadings. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. All reasonable inferences that may be drawn from the underlying facts are viewed in the light most favorable to the respondent. *Karazanos v. Navistar Intern. Transp. Corp.,* 948 F.2d 332, 335 (7th Cir. 1991). Looking at the pleadings and the record in the light most favorable to the Debtor, the Court finds that there is no genuine issue of material fact concerning the nature of the Debtor's debt to Plaintiffs, and that Plaintiffs are entitled to judgment as a matter of law.

The Debtor has not met his burden in response to the motion for summary judgment. Plaintiffs have made out a prima facie case under both § 523(a)(2)(A) and § 523(a)(6). Plaintiffs filed a statement of uncontested facts under local Rule 12(M). In support of the 12(M) statement, they introduced documentary evidence establishing each of the elements required thereunder. Plaintiffs submitted copies of the Judgment, Settlement Agreement, Modification Order, Motion to Modify Judgment, Remittitur Notice, appellate decision, two declarations re-

lied upon in the state court proceedings and the transcript of the hearing wherein the parties agreed to the terms reflected in the Judgment. In response, in addition to his answer and 12(N) statement,[2] the Debtor submitted the trial court transcript of March 12, 1990 and his personal affidavit.

In order to defeat Plaintiffs' motion, after they made a prima facie showing that they were entitled to judgment as a matter of law, the Debtor had the burden to respond affirmatively with factual evidence that a genuine issue of material fact existed. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. He has not done so. Moreover, the Debtor does not assert that he ever intended to live up to the terms of the Judgment. He does not deny that the Judgment was entered or that he obtained benefits thereunder at Plaintiffs' expense. He does not deny that Plaintiffs relied on his misrepresentations, nor does he assert that their reliance was unreasonable. Nowhere does he deny that he knew his actions would cause Plaintiffs' injury. His response to the motion, in his affidavit and 12(N) statement, merely recites facts not in dispute, and asserts that Plaintiffs have mischaracterized his conversations with Farnham, and that the California appellate court is not a trier of fact. Regardless of whether the appellate court is a trier of fact, the Debtor has not produced a shred of evidence to cast any doubt on its recitation of events, and, has not refuted its accuracy.

Rule 12(N) states that a response to a motion for summary judgment shall contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon... All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." The Debtor's 12(N) statement denies several paragraphs in Plaintiff's statement that report facts recounted in the appellate decision, on the basis that the Court of Appeal is not a finder of fact, but does not deny the substance of the paragraphs. The 12(N) state-

---

**2.** Rule 12(N) of the Rules of the U.S. District    Court for the Northern District of Illinois.

ment also disagrees with the Plaintiffs' report of the Debtor's conversations with Farnham, denying that "the conversations purported to have been held with Mr. Farnham were correctly reported by the Plaintiffs." (12(N) statement, paragraphs 6, 7, 10, 26, 27 and 29) However, it makes no reference, in accordance with the rule, to any materials supporting such denials, and the denials do not specifically deny the alleged statements. All statements made in Plaintiffs' 12(M) statement that are not denied in accordance with Rule 12(N) are deemed admitted.

In fact, the appellate decision is fully supported by all of the documentary evidence before this Court. An excerpt from page 33 of the appellate decision illustrates both the shortcomings of the Debtor's position on appeal and the deficiency of his response to the motion for summary judgment:

Most importantly, West's declaration contains nothing which contradicts Farnham's evidence that West never intended to abide by the settlement agreement and judgment. At no point does West deny either that the conversations took place or that he made the statements attributed to him. There was additional evidence of West's bad faith in the record of prior court proceedings, upon which the motion to modify the judgment also was based. Those records clearly show West's determination to avoid his settlement obligations by a spurious attempt to prevent the entry of a judgment.

Additionally, West acknowledges that he stripped SFPF of its assets by transferring the contract for the Great Wall Run or Megathon from SFPF to ISF. Indeed, he would have been hard-pressed to deny it, given the substantial documentary evidence of these facts. Finally, West has never denied the evidence presented in the Mosk declaration at the December 9, 1988 hearing on the motion to strike his request to dismiss the action. This evidence reveals that West began his efforts to strip SFPF of its assets and transfer them to ISF as early as November or December 1988, after he stipulated to the settlement agreement but before the entry of judgment.

In short, there is a wealth of corroborative evidence of West's bad faith in agreeing to the settlement and his meddling with nonprofit corporate assets, and a corresponding dearth of meaningful contradictory evidence. Consequently, the trial court had an ample basis upon which to determine the respective credibility of Farnham, E'Chavarrie and West from their declarations alone. It was not likely that an opportunity to see and hear their testimony would have been of particular assistance to the court.

Plaintiffs' complaint is based on the arguments that (1) the Debtor incurred a debt, liquidated at $175,000, for property he fraudulently obtained by stipulating to the terms of the Judgment without intending to comply therewith; and (2) that this conduct willfully and maliciously caused Plaintiffs' injury, including the amount represented by the $51,-849.40 in sanctions. Specifically, under the terms of the Judgment, the Debtor gained control of SFPF, and, as its alter ego, obtained all its rights and interests in property. He became the chairman of the board while his associates and other plaintiffs in the state court action, Donald Farnham and Gerard Radice, became secretary and treasurer/chief financial officer respectively. The former officers and directors, including E'Chavarrie, offered their resignations in compliance with the Judgment and withdrew from further involvement in the project. All contracts between TMG and SFPF were nullified from their inception. The Debtor obtained all of TMG's rights, title and interest in connection with names, logos, trademarks, service marks and concepts related to the Run, including all of its rights, title and interest in the mark "Great Wall Run Megathon" and the goodwill associated therewith. It is clear from the unrebutted evidence that the Debtor obtained property under the Judgment and, in the absence of his compliance, Plaintiffs were injured thereby. They lost SFPF as a vehicle to execute the Run, as well as the rights and interests in the intellectual property relating thereto. It is evident from the Debtor's actions and statements since the beginning of his involvement in SFPF, none of which he has denied, that he knew his acts were injuring Plaintiffs.

### COLLATERAL ESTOPPEL

Plaintiffs assert that the doctrine of collateral estoppel precludes the relitigation of the issues raised in their complaint, and the Court agrees. Collateral estoppel principles apply in nondischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 658–59, 112 L.Ed.2d 755 (1991). A party may rely on the doctrine when: (1) the issue sought to be precluded has been decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue was essential to the final judgment in the prior proceeding; and (4) the party against whom the doctrine is asserted was fully represented in the prior proceeding. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir. 1987).

Collateral estoppel precludes the relitigation of issues necessary to decide that the Debtor's debt for $175,000 under the Judgment is nondischargeable under § 523(a)(2)(A). To prevail under this section Plaintiffs must show by a preponderance of the evidence, *Grogan,* 498 U.S. at 286, 111 S.Ct. at 659, that: (1) the Debtor obtained a debt through representations that he either knew were false or that he made with a reckless disregard for their truth; (2) the Debtor intended to deceive Plaintiffs; (3) Plaintiffs relied on the misrepresentations to their detriment; and (4) their reliance was reasonable. *In re Kimzey,* 761 F.2d 421, 423–24 (7th Cir.1985); *In re Tapper,* 123 B.R. 594, 600 (Bankr.N.D.Ill.1991). The Los Angeles Superior Court made specific findings in its Modification Order that expressly establish that the Debtor made misrepresentations to Plaintiffs that he knew were false, and that he intended to deceive them: "Donald W. West entered into a Settlement in open court with Edmond E'Chavarrie and others with the express concealed intention that Edmond E'Chavarrie and Telecom Marketing Group never obtain the benefits of said settlement" (referring to the settlement reflected in the Judgment). The remaining elements are implicit in the court's findings and supported by the record: the Debtor obtained a debt for property (property he obtained under the terms of the Judgment)

when he entered into the settlement; and (2) Plaintiffs reasonably relied on the Debtor's misrepresentations when they entered into the settlement. Thus, the facts necessary to a showing under § 523(a)(2)(A) are the same ones the Los Angeles Superior Court relied on in entering the Modification Order.

As the Motion to Modify Judgment, the March 12, 1990 transcript and appellate decision show, these issues were litigated in state court, both at the trial and appellate level. They were raised in the Motion to Modify Judgment, and determined after consideration of the declarations presented and the Debtor and his counsel had an opportunity to be heard. The Debtor appealed the court's order on the basis that he did not receive a full evidentiary hearing and that the evidence was insufficient to support the court's findings. The appellate court affirmed the trial court's cursory order, issuing a lengthy decision of its own, detailing the Debtor's active participation in all the proceedings and his ample opportunity to present evidence and arguments, at times with the assistance of counsel and at times, on his own behalf as a licensed attorney.

The remaining elements of collateral estoppel are also met. First, the determination of the Debtor's fraud was essential to the Modification Order, both for the purpose of adding the Debtor and ISF as judgment debtors in the Judgment, and in levying sanctions. The court states no reasons for its decision other than its specific findings, all of which pertain to the Debtor's fraud: fraudulently entering into the agreement, using the processes of the court in bad faith, and creating ISF for the purpose of defrauding Plaintiffs. Second, the Debtor was fully represented throughout the state court proceedings, notwithstanding the manner in which he juggled his representation, perhaps, as the appellate court surmised, in an attempt to create the appearance of lack of adequate representation. The Court therefore finds that the doctrine of collateral estoppel bars the relitigation of the issues necessary to a determination that the Debtor's debt under the Judgment for $175,000 is nondischargeable under § 523(a)(2)(A). The application of collateral estoppel to the dischargeability, under

§ 523(a)(6), of the $51,849.40 in sanctions is discussed below.

The trial court's findings are sufficient to collaterally estop the Debtor from relitigating the issues supporting a determination that his debt, arising from the Judgment and Modification Order, including the sanctions, is nondischargeable under § 523(a)(6). For Plaintiffs to prevail under § 523(a)(6), they must show that the Debtor's acts were both willful and malicious. *Kimzey*, 761 F.2d at 424. "Willful" means "intentional," and "malicious" means "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487 (N.D.Ill. 1987); *In re Hallahan*, 78 B.R. 547, 550 (Bankr.C.D.Ill.1987), *aff'd*, 113 B.R. 975 (C.D.Ill.1990), *aff'd*, 936 F.2d 1496 (7th Cir. 1991). The three findings of the trial court all support the determination that the Debtor's acts were intentional and without just cause. He entered into the settlement in open court with the "express concealed intention" that they not receive the benefits of the settlement. He used the processes of the court "in bad faith" to avoid and delay payment under the Judgment. He created ISF, "consciously, and in bad faith," to avoid his obligations under the Judgment. The trial court's specific findings with regard to the Debtor's conduct are sufficient to bar relitigation of the same facts required under § 523(a)(6).

Even without the benefit of collateral estoppel, Plaintiffs would prevail on their motion. They have made out a prima facie case under both § 523(a)(2)(A) and § 523(a)(6) on the basis of the unrebutted documentary evidence presented. The Debtor has not challenged the substance of any of Plaintiffs' exhibits except to say that his conversations with Farnham were mischaracterized. Nor does he come forward with evidence to support a version of events different from that presented by Plaintiffs. With or without collateral estoppel, the Debtor has not met his burden in responding to the motion, and the motion will be granted.

*CONCLUSION*

The Debtor's debt for $175,000.00, plus post-judgment interest from January 17, 1989, is nondischargeable under both § 523(a)(2)(A) and § 523(a)(6); and the sanctions granted in the Modification Order, in the amount of $51,849.40, plus post-judgment interest from March 12, 1990, is nondischargeable under § 523(a)(6).