In re Johnny and Robin JACKSON.

**FIRST SUTTGART BANK & TRUST COMPANY, Plaintiff,**

v.

**Johnny and Robin JACKSON, Defendants.**

Bankruptcy No. 96–40404 S.
Adv. No. 96–4087.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Nov. 5, 1996.

Duff Nolan, Stuttgart, AR, for Plaintiff.

Henry Means, Little Rock, AR, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of the complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. The objection to dischargeability is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I) such that the Bankruptcy Court may enter judgment on the dischargeability claim. However, the Court has no jurisdiction over any request for the imposition of criminal penalties.

At the outset, the Court notes that there is no evidence of any dishonest behavior by the debtor wife, Robin Jackson. Other than the fact that her signature appears on the documents, there is no evidence of her participation in the transactions or that she disposed of the bank's collateral. Since there is no evidence that she acted in violation of the creditor's rights, she is discharged of the debts.

First Stuttgart Bank and Trust Company ("the bank") is the holder of two notes secured by a truck,[1] tanning beds and video cassettes owned by the debtors. In the spring of 1995, the bank advised the debtors that an inventory of the collateral was needed to renew the notes. The debtors did not respond to the letter. Thereafter, the bank learned that the collateral, or some portion of it, had been sold. Accordingly, on July 7, 1995, and July 24, 1995, it sent the debtors demand letters for full payment of the debts. It is virtually undisputed that the debtor Johnny Jackson disposed of the collateral

---

1. The truck was repossessed and sold by the creditor.

without regard to the rights of the bank. Indeed, at trial, the debtor admitted that he sold some videos, discarded some videos, and sold the tanning beds to get operating cash for a new store.

Section 523(a)(6) provides for the nondischargeability of a debt if the debtor causes wilful and malicious injury to another entity or to the property of another entity. Under Arkansas law, "A conversion in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction or in exercising dominion over it, in exclusion or defiance of the plaintiff's rights, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own." *Ray v. Light,* 34 Ark. 421, 427 (1879); *Quality Motors v. Hays,* 216 Ark. 264, 225 S.W.2d 326 (1949) (elements of conversion); *see In re Phillips,* 882 F.2d 302 (8th Cir.1989) (Breach of security agreement may fall within section 523(a)(6)). In the instant case, the injury was effected through conversion of the bank's security interest.

Under section 523(a)(6), "wilful" means an intentional act and "malicious" means a wrongful act done without just cause or excuse. *Aetna Casualty & Surety Co. v. Lentine,* 166 B.R. 476 (Bankr.S.D.Fla.1994); *E'Chavarrie v. West (In re West),* 163 B.R. 133, 140 (Bankr.N.D.Ill.1993). Malice is demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989). There is no requirement that the debtor act out of personal hatred, spite or ill will. *Lentine,* 166 B.R. at 478; *West,* 163 B.R. at 140. Rather, the focus is upon the debtor's actual knowledge or the foreseeability that his conduct will result in injury to the creditor. *Hilliard v. Peel (In re Peel),* 166 B.R. 735, 739 (Bankr.W.D.Okla.1994). In the instant case the unrebutted evidence is that the debtor Johnny Jackson deliberately and with knowledge of the bank's rights disposed of the collateral. Indeed, his only excuse appears to be that the collateral was already damaged or had little value.

The wilful and malicious element of the cause of action is further demonstrated by the fact that the debtor attempted to conceal the disposition of the collateral from the bank. When the bank first inquired regarding the collateral, the debtor responded that it was "in storage." At that time, however, the collateral had already been sold. This attempt at concealment is corroborated by the failure of the debtor to list the transfer on the bankruptcy schedules.

Finally, the Court does not find the debtor husband to be a credible witness. He was unable to answer questions directly, appeared to have several different versions of the same events, and was untruthful. The Court specifically does not believe his statement that he was unaware that the items were collateral for the loan.

The debtor asserts that the bank waived its rights in the collateral such that it is unsecured in this bankruptcy case. Specifically, the debtor asserts that since it did not ask for its collateral, it waived any right to assert secured status. While it is true that under Arkansas law, the routine acceptance of late payments may waive strict compliance with contractual enforcement provisions unless the creditor gives notice that strict compliance will be required in the future, *Mercedes–Benz Credit Corp. v. Morgan,* 312 Ark. 225, 850 S.W.2d 297 (1993), that rule does not equate to, as debtor appears to assert, a destruction of the security interest. The failure to demand turnover of the collateral when it made demand for payment does not effect a waiver of its rights under the contract. *Cf. Brown v. Arkoma Coal Corp.,* 276 Ark. 322, 634 S.W.2d 390 (1982). Even were that the rule in Arkansas, as a factual matter, the bank did not waive the contractual enforcement provisions or its rights in the collateral by its failure to demand return of the collateral. When the notes were coming due, the bank expressly advised the debtor that it wished to inventory its collateral. Thereafter, upon learning that the debtor had disposed of the collateral, it demanded full payment. There cannot be a duty to demand return of collateral that does not exist. The debtor's assertion that the bank waived its rights because it failed to perform

a useless action is without basis in law or fact.

The bank was secured by tanning beds and videocassettes. In selling or otherwise disposing of the collateral, the debtor husband acted wilfully and maliciously such that the debt is nondischargeable. Accordingly, it is

**ORDERED:** that the complaint will be dismissed on the merits as to the debtor Robin Jackson. The debt owed by Johnny Jackson to the creditor First Stuttgart Bank and Trust is nondischargeable in this bankruptcy case.

**IT IS SO ORDERED.**